ALABAMA & V. RY. CO. *v.* JACKSON & E. RY. CO.

[95 South. 733. No. 22820.]

1. EMINENT DOMAIN. *Railroad seeking to make junction or connection with another railroad may proceed in accordance with law of eminent domain.*

Under section 184, Constitution of 1890, and sections 4096 ,and 4099, Code of 1906 (Hemingway's Code, sections 6725, and 6728), providing that every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad, and upon the grounds of such other railroad company, with necessary and proper turnouts, sidings, switches, and other conveniences, and to exercise the right of eminent domain for that purpose, as provided in the chapter on that subject, a railroad company seeking to make a junction or connection with another may proceed in accordance with the provisions of the chapter on eminent domain in the Code.

2. COMMERCE. *Eminent domain. State empowered to require connection between contiguous railroads engaged in interstate commerce, even though property already devoted to public use.*

Where two railroads, each getting their charter rights from the state, and lying wholly within the state, and engaged in both intrastate and interstate commerce, be near and contiguous to each other, the state may lawfully authorize or require a connection or junction between them, and may exercise the right of eminent domain to condemn the necessary property, even though such property may be already devoted to public use, and the exercise of this power is not destroyed or taken away by any act of Congress, conceding, but not deciding, that Congress has the power to assume complete control of such subject under its power to regulate interstate commerce.

3. Eminent Domain. *Exercise of eminent domain to compel connection or crossing of another railroad must be reasonably exercised; power to exercise eminent domain to enforce connection or crossing of another railroad subject to review of chancery court.*

While a local railroad company may lawfully exercise the right of eminent domain to enforce a junction or connection or a crossing of another railroad, such power must be reasonably exercised with due regard to existing conditions, and must select a point of connection or crossing with due and reasonable care. Such power and right are subject to judicial review, and the chancery court in this state has jurisdiction to decide all questions involved in the exercise of the right, except the amount of the damages, which is for the eminent domain court.

Appeal from chancery court of Lauderdale county.

Hon. G. C. Tann, Chancellor.

Suit by the Alabama & Vicksburg Railway Company against the Jackson & Eastern Railway Company to enjoin defendant from exercising the right of eminent . domain. From a decree sustaining a demurrer and dismissing the bill, plaintiff appeals. Reversed and remanded.

See, also, 129 Miss. 437, 91 So. 902.

*R. H. & J. H. Thompson,* for appellant.

First: The interstate commerce commission now has, and had when the eminent domain proceeding was begun, exclusive jurisdiction to grant the Jackson & Eastern Railway Company a right, if it have the right, to a junction of its track, not yet constructed, with the track of the Alabama & Vicksburg Railway Company.

Nothing is better settled than that Congress has plenary power over interstate commerce. Until Congress acts upon the subject-matter within its power the states may, at least, to some extent, act upon the subject, but when Congress constitutionally legislates upon a subject-matter all constitutional provisions, statutes and regulations on the subject are displaced and annulled. See the authorities cited in Exhibit 1 to this brief.

Congress has acted upon the subject-matter of the junction of the two interstate railroads and both parties to this suit are interstate railways.   Interstate Commerce Acts, Amendment of February 28, 1920, section 1 (9) ; U. S. Compiled Statutes, 1918, Compact Edition, section 8563 (7), and section 8584 (11), and the second paragraph of section 3 of the Interstate Commerce Act as amended by the Transportation Act, copies of which are hereto attached.   Exhibit 2 of this brief, are Congressional Acts upon the subject of junctions of two railroads engaged in interstate commerce, and these statutes empower the Interstate Commerce Commission to grant the right to one railroad to make connection and junction with another and the power so granted the Interstate Commerce Commission is an exclusive power and negatives the right of any other tribunal to pass upon the necessity, justness and propriety of such junctions.   When Congress acts upon any subject-matter, power to legislate in respect to which is given it by the Constitution of the United States, all state constitutional provisions, state statutes and regulations are displaced and annulled.   See authorities cited in Exhibit 1 hereto.

The Interstate Commerce Commission is a tribunal to which has been given the power, and an exclusive power it is to determine the right of one railroad by compulsory proceedings to unite its track with the track of another railroad.   It will be seen from the Federal Statutes that unsafe and dangerous junctions will not be ordered by the Interstate Commerce Commission; that tribunal being empowered to determine what junctions are safe and to deny unsafe ones, and as well, to deny junctions for other reasons.   The power of the Interstate Commerce Commission is exclusive.   We shall hereinafter call attention further to the Act of 1908.   We think the authorities cited in Exhibit 1 to this brief fully maintain our contentions. Laws of Mississippi 1908, chapter 89, page 72.

If by any process of reasoning it can be held that the Statute, Laws of Mississippi, 1908, chapter 89, page 72, has

not been superceded by the Acts of Congress on the subject of junctions between two railroads, then and in that event, although we believe Mississippi statute has been entirely superseded, we have to say: "The statute to which we have above referred, approved March 21, 1908, is a limitation upon the right of one railroad to enforce a junction of its track with the track of another railroad. This statute seems to have been enacted upon the conception that the code chapter on the subject of Eminent Domain did not afford a remedy to a railroad company desiring to enforce a junction of its track with the track of another railroad, and the statute is an amendment of all state laws pertaining to the right of one railroad company to enforce a junction of its track with the track of another railroad company. The statute is certainly a limitation upon the right of a railroad to enforce a junction of its track with the track of another railroad, and a railroad is not entitled to enforce a junction unless its case falls squarely within the provisions of the Act of March 21, 1908."

There can be no reasonable claim made by the appellee that the two railroads, to use the language of the statute, are running parallel to each other. They must not only be of the same gauge, but must be running parallel to each other, otherwise the appellee is not entitled to enforce the junction sought under the first clause of the statute. This court knows judicially, because as a matter of common knowledge, and as shown by the official maps of the state, that the Jackson & Eastern Railway is not running at all, parallel or otherwise at any point nearer the Alabama & Vicksburg Railway Company other than Sebastopol, Scott county, more than twelve miles distant from the Alabama & Vicksburg Railway Company's tracks, at the shortest distance between them at any point on their lines, and it is not less than forty, perhaps fifty, miles distance from the place on the Alabama & Vicksburg Railway Company's track where a junction is sought to be made. Junctions can be ordered only of "running railroads;" not where one of the roads has not been constructed.

Whose convenience and welfare does the statute make controlling in the matter of railroad injunctions? Certainly it is not the convenience of either of the railroads whose tracks are sought to be connected. In the case now before the court one of the railway companies seeks a junction and the other opposes it. If it can be conceived that the convenience and welfare of the railroads are to be considered in construing the statute, then the convenience and welfare of both roads must be considered, and a junction can be ordered only where the convenience or welfare of both will be thereby promoted.

Concluding observations. In the original brief in this case in appellant's behalf, the case of *South Dakota etc., Ry. Co.* v. *Chicago, etc., Ry. Co.,* 141 Fed. 579, decided October 20, 1905, by the United States circuit court of appeals, eighth circuit, is cited only by pencil note at the beginning of the brief. We now ask the court to duly consider that decision; it is, we think, decidedly in point with this case. There, as here, one railroad company sought to condemn a part of another railroad company's main line of track longitudionally upon the latter company's right of way. The constitutional provisions of South Dakota and of this state were and are substantially the same and the statutes of the two states were and are practically to the same effect. Our statutes are no broader in appellee's favor than were the statutes of South Dakota.

*Neville & Stone,* for appellee.

In reply to the contention of counsel for appellant, that "the provisions of the Congressional Transportation Act of 1920 invested the Interstate Commerce Commission with the exclusive right, power and jurisdiction to compel connections between railroads, etc." We refer the court to the decision of the supreme court of the United States in the case of the *United States* v. *Baltimore & Ohio Southwestern Railroad Co., supra.*

We also call the court's attention to the case of *Missouri Pacific R. R. Co.* v. *Larabee,* 211 U. S. 613, wherein the supreme court of the United States held that the mere delegation by Congress to the Interstate Commerce Commission of certain national powers over interstate commerce is not the equivalent of the specific action by Congress in respect to particular matters involved, which prevents the state from making regulations conducive to the welfare and convenience of its citizens that may indirectly affect commerce.

The supreme court of the United States also held, in the case of *Wisconsin Railroad Company* v. *Jacobson,* 45 Lawyers' Edition, page 198, that the forcing of a physical connection between interstate roads is not a regulation or interference with interstate commerce. Furthermore, the lines of the appellant and the appellee are located wholly within the state of Mississippi. It is true that both of these roads handle interstate shipments, and are therefore, engaged in interstate commerce, as well as intrastate. The supreme court of the United States, in a very recent case, has held that the Interstate Commerce Commission did not have the authority under the Congressional Transportation Act of 1920 to authorize an intrastate railroad to abandon its road in so far as its intrastate business was concerned. We are unable to refer your Honors to the advance sheet of the United States supreme court report where this case is published, but your Honors are, of course, familiar with this holding. Under the reasoning of the supreme court of the United States in this case we think Congress is without power to deprive the state of the right to force switch connections between intrastate railroads.

In reply to the contention of counsel for appellant, that your Honors should grant a *supersedeas* as a matter of course, we desire to call your Honors' attention to the following language, used by the supreme court of Alabama, in the case of *Highland Avenue Railway Co.* v. *Birmingham Railway Co.,* 9 So. at page 570: "Furthermore, on the question of retaining or dissolving the injunction, regard

should be had to the consequences of adopting the one course or the other. If the injunction is dissolved and the crossing is made in the manner proposed by the defendant according to the averments of the bill, and thereafter it turns out that complainant was entitled to compensation as it now claims, still it will have suffered no injury for which it will not have adequate redress at law. If, on the other hand, the injunction is retained, and it eventually turns out that the defendant fully sustains its claim of right to make the crossing, the result, perhaps, would be to have deprived the public of increased facilities and conveniences of travel by the unwarranted interposition of a barrier to the construction of an additional line of railway, and to have entailed upon the defendant by the obstruction and delay of its work, such damages as would be incapable of definite ascertainment. In view of the situation of the parties, it seems plain that the retention of the injunction would occasion more of injury and inconvenience than could follow from its dissolution. The considerations which should have weight in the exercise of that judicial discretion, with which the court is vested in such a case, suggest the propriety of dissolving the injunction. *East & West R. Co.* v. *East Tennessee V. & G. R. R. Co., supra.*"

If a *supersedeas* is granted in this case the appellee cannot construct its railroad, and the citizens along its proposed route will be deprived of railroad facilities and appellee will suffer great damage, for which the appellant will not be legally liable. The main grounds of complaint made by appellant, in its bill are, first, that the building of a railroad embankment by appellee up the Pearl river valley, will affect the flow of the overflow water from Pearl river, and will damage appellant's roadbed and bridge; second, that the use by appellee of appellant's main line into Jackson, and its terminal facilities in Jackson, will cause appellant irreparable damage.

With reference to the first contention it is only necessary to call the court's attention to the fact that this em-

bankment complained of is not on appellant's property, and the building of this embankment is not enjoined in this case; and the answer to the second contention is, that the appellee does not seek in the condemnation proceedings enjoined to secure the right to use the main line of the appellant's road into Jackson, nor its terminal facilities in Jackson.

In its application the appellee, in order to fully protect the appellant, has described with great particularity, the point where the connection is sought to be made, the character of the material to be used, the portion of appellant's right-of-way over which the switch is to be built, the kind of embankment to be built, and it has also stipulated that the switch is to be locked, and a derailer to be placed on said switch a certain distance from the main line of the appellant.

The contention that appellee, in case it secures this switch connection, would have the exclusive possession and control of a part of the main line of appellant at the point where the switch joins its main line, we submit is wholly untenable. The switch connection sought to be condemned will in no way interfere with the appellant's possession of or control over any portion of its main line. The only purpose of the switch connection is to make it possible for the appellee to deliver freight in carload lots to the appellant, and also to enable the appellant to deliver to appellee freight in carload lots, consigned to appellee. Necessarily all switching over the proposed switch track will have to be made by the engine and employees of the appellant.

We respectfully and earnestly submit to your Honors that there are no allegations in appellant's bill that call for an answer, and that the chancellor very properly dissolved the injunction on the face of the bill. If we are right in this contention, then we submit, most earnestly, that the appellee should not be further restrained from securing the switch connection sought, which is absolutely essential to its life.

ETHRIDGE, J., delivered the opinion of the court.

On the 25th day of February, 1922, the Jackson & Eastern Railway Company, a railroad corporation incorporated under the laws of the state of Mississippi, subsequent to the enactment of the Code of 1906, filed its application with the circuit clerk of Rankin county to condemn a connection with the Alabama & Vicksburg Railway Company, also a Mississippi corporation, setting out in detail the description of the property of the defendant which it desired to condemn in making the connection. The petition, after describing the property sought to be condemned, stated:

"The connection which the applicant herein seeks to acquire by condemnation proceedings with the main line of the defendant, the Alabama & Vicksburg Railway Company, is to be a nine turnout and the use of seventy-five pound rail, of the same character and design which is now used on the main line of the Alabama & Vicksburg Railway Company at the point of connection," etc.

The appellant thereupon filed the bill for injunction, seeking to restrain the Jackson & Eastern Railway Company from exercising the right of eminent domain, and alleged in its bill that the Alabama & Vicksburg Railway Company is a corporation under the laws of the state of Mississippi, its railway line extending from Vicksburg, Miss., to Meridian, Miss., and passes through the counties of Warren, Hinds, Rankin, Scott, and Newton and that part of Lauderdale county between the Newton county line and the city of Meridian; that complainant had been in the adverse possession of its railway from 1889 until the present time and is now in such possession and control. It further set up that the Canal Commercial Trust & Savings Bank and Felix E. Gunter are the trustees in a mortgage executed March 23, 1921, and are interested in the suit because of their trusteeship; that the Jackson & Eastern Railway Company is a Mississippi corporation, domiciled at Meridian, Lauderdale county, Miss., and is given only the powers and privileges specified and enumerated in the chapter on railroads, sections 4080 to 4099, in-

131 Miss.—55

clusive, Code of 1906; that the said defendant had instituted eminent domain proceedings under the Code of 1906, sections 1854 to 1877, inclusive, to condemn and take from the complainant a part of said complainant's right of way and roadbed, including a part of its main line of railway, its cross-ties and iron rails, and to divest complainant company of a part, and a necessary part, of its roadbed, right of way, cross-ties, and iron rails.

It further alleged: That complainant is advised that the statutes of the state of Mississippi providing for the exercise of the right of eminent domain, do not authorize or empower any person or corporation of any kind to condemn any land or property, unless such property sought to be condemned be private property. The statutes under the chapter on eminent domain enact an instruction to be given the jury in assessing damages and in another section prescribe the form of verdict and that the only judgment the eminent domain court can render is one divesting the defendant of all title to the property condemned, and investing the same in the plaintiff or party exercising the right of eminent domain. That other sections of said chapter show that the statutes of Mississippi on the subject have no application to such a proceeding as the defendant has begun against the complainant, and that it is incomprehensible that the law designs or permits one railroad company to acquire the exclusive ownership of another railway company's tracks, or any part thereof.

That, if the Code of 1906, sections 1854 to 1877, inclusive, should be construed to justify or warrant eminent domain proceedings by the defendant against the complainant they will be null and void because violative of the state Constitution as well as the Fourteenth Amendment to the Constitution of the United States, and that said statutes so construed will be unconstitutional and will deny the complainant equal protection of the law and take property without due process of law. That the complaint is aware that, under section 4096, Code of 1906, a defendant is given the right to cross, intersect, join or unite its rail-

road with any other railroad at any points on their roads, and upon the grounds of such other railroad company, with the necessary and proper turnouts, sidings, switches, and other conveniences, and to exercise the right of eminent domain for that purpose. That complainant does not object to the defendant being given all the right it may have under its charter as granted by section 4096, Code of 1906, at a proper and reasonably safe place for the junction or uniting of the two railroads; but that the point of junction sought by the defendant in its said proceedings is entirely improper and eminently dangerous, and that the said section does not confer authority to condemn complainant's right of way longitudinally, or give the defendant the benefit or use of complainant's track or station facilities. That the defendant cannot exercise powers of eminent domain under the provisions of the chapter entitled eminent domain, because such chapter was limited to the condemning of private property, and the complainant's railroad is not private property but property devoted to the public use.

It further alleged, under the law of this state, the complainant cannot contest in the eminent domain court any other question than the amount of damages to be awarded, and that such court has no jurisdiction to determine the propriety or rightfulness and legality of the junction at the point where it is sought by the defendant.

It is further averred: That under section 184, Constitution of 1890, the complainant's road is a public highway, and that said complainant has since 1889 carried persons and property for hire, and hence its road and other property is not private property, but is and has been for many years devoted to the public use. That it will not object to intersection or connection of its railroad with that of the defendant at a proper and suitable and not a dangerous place, and will be willing when the connection is made to receive and transport defendant's passengers, tonnage, and cars, loaded or empty, without unnecessary de-

lay or discrimination upon payment by the defendant of just and reasonable compensation.

It is further charged that, upon information and belief, the objects and purposes of the defendant in beginning the said eminent domain proceedings were not only to effect a junction of its road with the complainant's road, but designs and purposes to run its trains, locomotives, and cars over the main line of the complainant, built upon a high and costly fill or embankment, and over its costly bridge across Pearl river from the junction point to the city of Jackson, and to use its station facilities, side tracks, switches and other like things in said city for its own purposes, although complainant's facilities have no greater capacity than is required for its own use and business, and is insufficient to justify or accommodate the business of the defendant, and that the defendant has no right to condemn its said property for such purposes.

It further alleged that defendant has not been authorized by the Interstate Commerce Commission to make connection or use the tracks or property of the complainant, although the complainant is informed and charges that defendant has made application to the Interstate Commerce Commission for leave to do so.

It is further alleged that section 187 of the Constitution of 1890, requires every railroad which passes within three miles of a county seat to pass through the same and to establish and maintain a depot therein, unless prevented by natural objects, etc., and that defendants railroad will be within less than three miles of the city of Jackson, at the point of junction, and that the city of Jackson is the county seat of the first district of Hinds county, and that there are no natural obstacles to prevent it from going into the city of Jackson on its own tracks, and that the defendant has not applied to the city of Jackson, nor to the citizens thereof, for sufficient grounds for ordinary depot purposes, and that defendant is seeking to escape the provisions of the said section of the Constitution by seeking the condemnation sought to be enjoined.

It further alleged: That the place where the condemnation is sought to be made is improper, unsafe, and dangerous for a point of junction of two railroads. That the line of the defendant as projected for many miles practically north up Pearl river from the place of junction, is to all intents and purposes parallel to Pearl river itself, and that said railroad is to be constructed largely in the valley of Pearl river and is to be constructed so as to prevent and will prevent the overflow waters from Pearl river from spreading out over the valley, the natural channel for the escape of overflow waters from the said stream. That for a mile or two from the proposed place of junction the defendant's railway will be constructed upon an embankment which will dam up and obstruct the overflow waters of Pearl river and to a large extent return the same to the channel of Pearl river, thus increasing to a material extent the height of the water in the river itself. That for a considerable distance up Pearl river and north of the proposed place of junction the overflow waters from Pearl river will be dammed up and thrown back into the river, and no matter what openings may be made in the defendant's tracks, the overflow water will be concentrated and thrown through narrow passages on the embankment and track of the complainant's road and will greatly endanger the safety of the same. That the defendant's line of railroad for a considerable distance up Pearl river will necessarily be upon a high embankment, a small portion thereof, beginning at the edge of the right of way of the Alabama & Vicksburg Railway Company has already been constructed, or partially constructed. There are not sufficient openings left in its embankment to carry off the oveflow water safely even to the defendant's road, but, even if sufficient for that purpose, the result will be a concentration of the overflow waters so as to throw them with great force and violence against the railway tracks of the Alabama & Vicksburg Railway Company, and will greatly endanger the embankment of the complainant's railway, and its tracks and property. That the line of

the defendant's railway as laid out at a point about one-half mile northward from and up Pearl river, is within a short distance not over two hundred yards of Pearl river. That from said point defendant's road turns to the west as laid out, practically parallel with Pearl river, and approaches the lines of the Alabama & Vicksburg Railway Company's track on a sharp curve, the inside or northern rail of which will be lower than its upper or southern rail. That the point where the defendant purposes to make its track connection with the complainant's track is upon curves on both roads, the complainant's right curving to the left going west and the defendant's curving to the right as it approaches the track of the complainant's road, thus rendering it an improper place for the junction of two roads, because it will be practically impossible, if both roads use the automatic couplers required by an act of Congress to be used, to couple cars where both roads are on a curve.

That Pearl river is a stream of considerable proportions subject to annual overflows and periodically to extraordinary overflows, so much so that in the past the complainant's track has been overflowed, washed away, and put out of use on several occasions. That, should the defendant's railway be permitted to make a junction with the railway of the Alabama & Vicksburg Railway Company at the point proposed, the overflow waters which now spread over the valley of Pearl river will be dammed up between the defendant's tracks and the river. That complainant's track, located near the point where the defendant proposed to intersect it is not more than one hundred feet from the river at the nearest point, and that there is an outlet under complainant's track through which a large proportion of the river water flows in times of high water. That complainant's track at this point is upon a long trestle about three hundred feet long, and the overflow waters of Pearl river largely pass under this trestle and the trestle is insufficient to resist any material increase of the overflow waters that now pass thereunder.

It further alleges: That it believes the defendant's railway track, if it be constructed as designed to form a junction at the point proposed by the defendant, that in times of overflow so much additional water will flow thereunder as to greatly endanger the said trestle and track, and that they will be destroyed by such excessive amounts of water. That complainant's track at this point is about ten feet higher than the surrounding soil, and, if the defendant's junction is made there, it will necessitate a fill of equal height for all the sidings and interchange tracks required to be constructed at the place of junction. That this will involve extensive drainage problems and seriously interfere with the drainage of the tracks. That it is always dangerous to have a junction on elevated embankments; and that such junction would be unusually dangerous. That such junction is immediately east of the public drive or public road crossing known as "Curran's Crossing," which itself, because of the curve in the tracks of the Alabama & Vicksburg Railway Company, is a dangerous crossing. That such crossing is subject to a heavy highway traffic and is used to carry all of the traffic in automobiles, wagons, horses, and people on foot to points east of Pearl river and south of the Alabama & Vicksburg Railway Company's tracks, and has been the scene of serious accidents, and that the junction of the two railroads at or near such crossings will materially increase the amount of train movements over this crossing, thereby increasing the danger of accidents at the crossing. That in addition the proposed junction is near the suburbs of the city of Jackson and will endanger the giving of the block signal system of the Alabama & Vicksburg Railway Company and will cause delay in the movements of its trains. That the curves on the said two railroads will obstruct the view of the train crews, and that the engineers in charge of the trains could not see to advantage, if at all, around the curve, and chances of accident will be greatly increased by the fact that both railroads come to the junction if it is made upon curves.

It further alleged that the Interstate Commerce Commission has exclusive jurisdiction over the establishing of junctions between railroads engaged in interstate commerce, and that both railroads are so engaged, and that the federal law displaces the state law if the federal act be valid.

The bill was demurred to, the demurrer sustained, and the bill dismissed, from which this appeal is prosecuted. The first question we will consider is whether the junction can be made under the proceedings instituted by the appellee in the eminent domain court. Under section 184, State Constitution of 1890.

"Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad; and all railroad companies shall receive and transport each other's passengers, tonnage, and cars, loaded or empty, without unnecessary delay or discrimination."

Under section 190, Constitution of 1890, it is provided:

"The exercise of the right of eminent domain shall never be abridged, or so construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use," etc.

In the chapter on railroads, Code of 1906, section 4093 (Hemingway's Code, section 6722), it is provided:

"To enter upon all lands, and to survey, lay out, and construct a railroad thereon; but before so doing it must contract and agree with the owner upon the price to be paid for the land or its use, or with the administrator, executor, or guardian in case the owner be dead, be an infant, or person of unsound mind; or it must condemn and acquire the same, if an agreement cannot be made, by the exercises of the right of eminent domain as provided in the chapter on that subject."

Section 4096, Code of 1906 (Hemingway's Code, section 6725), provides: "To cross, intersect, join, or unite its railroad with any other railroad heretofore or hereafter constructed at any points on their routes, and upon the ground of such other railroad company, with the necessary

and proper turn-outs, sidings, switches, and other con-
veniences, and to exercise the right of eminent domain for
that purpose."

Section 4099, Code of 1906 (Hemingway's Code, section
6728), provides: "To do and perform all and everything
necessary to the exercise of the powers expressed, and to
the accomplishment of the objects of its creation and or-
ganization, including the exercise of the right of eminent
domain as provided in the chapter on that subject."

In our opinion these sections confer upon railroad com-
panies the right to exercise eminent domain in order to
carry out the powers given. In the last secton named,
4099, Code of 1906 (Hemingway's Code, section 6728), it
is expressly provided that such companies may exercise
the right of eminent domain "as provided in the chapter
on that subject." These sections confer upon the appellee
and other railroads the right here sought to be exercised,
and in the exercise of the eminent domain powers con-
ferred, it is provided that it shall be exercised in the man-
ner provided in the chapter on eminent domain. These
sections under the railroad chapter above set out confer
the rights to be exercised by eminent domain proceedings.
Section 1854, Code of 1906 (Hemingway's Code, section
1492), provides for the exercise of the right of eminent
domain generally by any person or corporation having
the right to condemn private property for the public use.
The chapter then constitutes a special court and establishes
the procedure to be followed and the eminent domain pro-
ceedings by the railroads to exercise the rights of crossings
or intersections of other railroads, are to be exercised by
this special court. The power given railroad companies
is not given by section 1854, Code of 1906 (Hemingway's
Code, section 1492), but is given by the sections under the
railroad chapter, but the proceedings in each case are
alike. We think, therefore, that the railroad company had
the right to proceed under the special court created in the
chapter on eminent domain, and that the procedure in

that chapter would govern as far as that chapter gave rights.

We are also of the opinion that Congress has not taken over full control of the subject of making physical connections between railroads, conceding, but not deciding, that Congress has validly conferred upon the Interstate Commerce Commission jurisdiction to establish such physical connection. The complainant and the defendant each are corporations created by the law of the state of Mississippi, and each are engaged in intrastate commerce, and the state has power to enforce physical connections between railroads in aid of intrastate commerce. The exercise of this power will not interfere with interstate commerce, certainly not in any appreciable degree. Such connection will be in aid of interstate commerce also, and there is no reason to believe that Congress intended to prohibit the state's exercise of this power, even if it had the power so to do.

However, we think the chancellor was in error in sustaining a demurrer to the bill for injunction. The right to make a physical connection by one railroad with that of another must be reasonably exercised. In other words, the point of junction must be selected with due care with reference to the interest and welfare of both railroads, and with reasonable consideration for the safety and other rights of the general public, as well as of the two railroad companies.

Under the facts alleged in the bill as above set out we think the complainant had a right to resort to a court of equity to have this question determined, as it could not raise the question in the eminent domain proceedings, as has been decided by this court in the case of *Vinegar Bend Lumber Co.* v. *Oak Grove & G. R. Co.,* 89 Miss. 84, 43 So. 292. In other words, in this case, the court construed the statute of eminent domain and adjudicated that the only question that could be decided in that proceeding was the amount of damages; that the court could not decide the right of the plaintiff in such proceedings to institute

the proceedings; nor could any other question be raised than that of the amount of damages, and that the circuit court on appeal from the judgment of the eminent domain court had no greater right of jurisdiction than the eminent domain court had. It also decided that equity had jurisdiction, and that it was the court of exclusive jurisdiction in all other cases than the assessment of damages.

We think it certainly could not be that one railroad company can alone select a place of junction, regardless of circumstances or conditions. It has the right to intersect such railroad or cross it whenever the conditions are such that it may do so without endangering unduly the public safety or the rights of interests of the other railroad company, considered with reference to the feasibility of the proper junction at a more reasonable point, having due regard to the circumstances, the interests of the two railroads, and that of the general public.

The judgment will be reversed, the demurrer overruled, and the cause remanded, with leave to answer the bill within thirty days, or such additional time as the chancellor may allow.

*Reversed and remanded.*