ALABAMA & V. RY. CO. *et al. v.* JACKSON & E. RY. CO.[*]

(En Banc. Nov. 3, 1924.)

[101 So. 553.  No. 24292.]

1. APPEAL AND ERROR. *Decision reversing judgment and remanding cause for hearing on question of fact is law of case on subsequent appeal.*

   Where judgment was reversed and cause sent back for hearing merely on question of fact, law of case was settled by former decision, and court, on subsequent appeal, will merely ascertain whether finding of fact by chancellor on such issue is manifestly wrong.

2. EMINENT DOMAIN. *Evidence held to sustain finding as to reasonableness of proposed junction.*

   Evidence *held* to sustain finding that proposed junction at point where one railroad sought to connect with another, under Const. section 184, and Code 1906, section 4096 (Hemingway's Code, section 6725), was reasonably safe and proper.

3. EMINENT DOMAIN. *Place of junction selected by railroad seeking connection with other road must be reasonably safe and proper.*

Railroad can exercise right to connect at any point on other railroad, under Const. section 184, and Code 1906, section 4096 (Hemingway's Code, section 6725), if proposed junction is reasonably safe and proper, in view of the circumstances and interests of the two railroads and that of the general public.

4. EMINENT DOMAIN. *Application to condemn easement for connection with other railroad held sufficient.*

Railroad's application under Const., section 184, and Code 1906, section 4096 (Hemingway's Code, section 6725), *held* sufficient for condemnation of easement for connection with line of other railroad, as against contention that application sought to condemn ownership of fee.

5. EMINENT DOMAIN. *Railroad entitled to condemn merely easement for connection with other road.*

Under Const., section 184, and Code 1906, section 4096 (Hemingway's Code, section 6725), railroad seeking connection with other road can condemn merely an easement for the connection and not the ownership or the fee in a strip through other railroad's land at place of proposed junction.

6. EMINENT DOMAIN. *Plans of railroad seeking connection with other road to be executed in distant future, not considered on question of reasonableness of proposed junction.*

Under Const., section 184, and Code 1906, section 4096 (Hemingway's Code, section 6725), giving one railroad right to intersect and connect with another, court in passing on reasonableness of proposed junction, will not consider plans of railroad seeking connection, to be executed in the distant future.

ANDERSON, J., dissenting.

*Headnotes 1. Appeal and Error, 4 C. J., section 3088; 2. Eminent Domain, 20 C. J., section 384; 3. Eminent Domain, 20 C. J., section 94 (1926 Anno); 4. Eminent Domain, 20 C. J., section 361; 5. Eminent Domain, 20 C. J., section 583; 6. Eminent Domain, 20 C. J., section 380 (1926 Anno)

APPEAL from chancery court of Lauderdale county.
HON. G. C. TANN, Chancellor.

Suit by the Alabama & Vicksburg Railway Company and others against the Jackson & Eastern Railway Company. From the decree rendered, plaintiffs appeal, and

defendant cross appeals. Affirmed on direct and cross appeal.

*Bozeman & Cameron, J. B. Monroe, R. H. & J. H. Thompson* and *S. L. McLaurin,* for appellants.

I. In the condemnation proceedings the Jackson & Eastern sought to acquire, and if unrestrained, would have obtained a judgment awarding it the right to "own, occupy and use" a section of the Alabama & Vicksburg main line track. Nothing is said in the petition or application touching a joint ownership or joint use of the land by the two railway companies. Nothing is said about the Alabama & Vicksburg Company's right to still use the land. The prayer of the petition is for the condemnation of said lands as required by chapter 43, section 4096 of Mississippi Code of 1906. If the eminent domain suit be permitted to proceed to judgment without amendment of the petition, the judgment of the eminent domain court is prescribed by statute, Mississippi Code of 1906, section 1867 (the eminent domain court being powerless to change it) and will be as above set forth. See *Pontiac Improvement Co.* v. *Board of Commissioners,* 135 N. E. 635 (23 A. L. R. 866), Ohio, 1922.

Therefore, assuming that the Jackson & Eastern Company is entitled to a junction between the two roads under Mississippi Constitution 1890, section 184, and to exercise the right of eminent domain to enforce a junction, still the injunction should be perpetuated, for if it is not perpetuated and complainant is relegated to the condemnation suit, a judgment will be rendered against it actually taking from it the ownership of its main-line tract. Such a judgment would be contrary to both the Constitution and statutes of Mississippi and the Constitution and statutes of the United States.

II. Has the proposed point of the junction been selected with care with reference to the interest and welfare

of both railroads, and with reasonable consideration for the safety and other rights of the general public, as well as of the two railroad companies? We respectfully submit that it has not. We go further and boldly assert that the junction point was selected in total disregard of the interest and welfare of the railroads and without any consideration for the safety or other rights of the general public, the travelling public, or the railroad employees whose lives would be endangered were the junction to be there established. The sole and only motive apparent to us in the making of the selection was a desire to obtain the use of the main line and the bridge of the A. & V. Railway Co. The most difficult of all propositions to argue is a question of fact of which the evidence is to all intents and purposes conclusive. Such we conceive is the question of fact stated in the headline of this subdivision. It is our firm belief and carefully weighed conclusion that the record in this case conclusively answers that question in the negative. The complainant's witnesses in this case, all of them including those who are civil engineers, were and are familiar with the conditions existing at the proposed place of junction. They all know Pearl River and the extent of its power; all are fully informed as to the destructiveness of its overflow and all know what to expect from it in the future. Their knowledge comes from many years experience and observation. The defendant's Civil Engineers, who testified in the case, have according to their own admissions had but poor opportunity to know the river and they underestimate its power and the extent and force of its overflow. They have testified giving their opinions only from limited observation. They do not know the river as do the complainant's witnesses.

It is an admitted fact that there are five separate elements of danger in a junction of two railroads at Curran's Crossing: They are: (1) The dangers from Pearl River, (2) the two roads are each at that point

upon a considerable curve, (3)  both ends will be on a fill about ten feet in height above the surface of the surrounding soil, (4)  the proposed junction will be between two lengthy trestles under the complainant's main track and so near each of them that the switching and breaking up of trains will have to be done over each of the trestles, and  (5)  the proposed junction, if effected, will be immediately adjacent to a very dangerous highway crossing being one of the most important and most used highways in Rankin county.  When the combination of these five material elements of danger, each intensifying the others, is considered, it is difficult to imagine how any person can reasonably claim Curran's Crossing to be a proper and safe place for the junction of two railroads.

III.  THERE IS A SAFE AND PRACTICAL JUNCTION POINT IN THE IMMEDIATE NEIGHBORHOOD OF CURRAN'S CROSSING WHICH IS CHEAPER TO BUILD AND MAINTAIN.  The Jackson & Eastern can come to a junction with the Alabama & Vicksburg by a more direct and more economical route if it will keep its line out of the flood area of Pearl River and skirt the line of the hills to the East of that flood area.  Mr. Neville has testified on p. 1041 that a right of way can be obtained to this Durham Junction without material cost, and the engineers have testified without contradiction, or attempt at contradiction that the junction thus made will be free of the difficulties and objectionable features which obtain at Curran's Crossing.

*Neville & Stone* and *Green, Green & Potter,* for appellee.

The issue presented for trial as directed by this court in its former opinion is an issue of fact comprising the five grounds of danger set out by appellants.  The chancellor found as a matter of fact that the point selected for this interchange connection was not an unduly dan-

gerous point as alleged in complainant's bill, and on
this finding of fact the chancellor dissolved the injunc-
·tion and dismissed complainant's bill.  Much testimony
was taken as shown by the record in this case but we de-
sire here to call the court's attention to the fact that all
the testimony which was considered by the chancellor in
arriving at his conclusion is not contained in the record
before this court.  A[t the request of one of the parties
the chancellor went upon the ground and personally in-
vestigated and observed the facts and conditions that
were to be seen by one actually upon the premises.  We
do not know what effect the personal observations and
examination of the premises had upon the chancellor's
mind in directing it to the conclusion that the place was
not improper and unduly dangerous for an interchange
connection.  Therefore all the testimony in this case is
not before the court.

Unless it affirmatively appears that all the evidence is
in the record, the supreme court will not review the
evidence.  *Lauderdale County* v. *Citizens Bank,* 80 So.
530; *Reynolds* v. *Wilkerson,* 81 So. 278, 119 Miss. 590;
*Carstarphen* v. *Jones,* 67 Miss. 177, 108 So. 704; *Hicks
Mercantile Co.* v. *Musgrove,* 67 So. 213, 108 Miss. 776.

On the question of the effect of the chancellor view-
ing the scene, the authorities elsewhere are in conflict,
but our court in *Foster* v. *State,* 70 Miss. 762, holds, (1)
that what is seen is evidence, and (2) that "impressions
are made on the mind of jurors by dumb witnesses.  They
do have evidence of inanimate things.  They are receiv-
ing impressions, evidence, enlightment from voiceless
things, call it by whatever things you will; and they are
themselves thus made silent witnesses for or against the
accused.  They return to the courtroom with impressions
and opinions formed by an examination of dumb, inani-
mate witnesses, and, if erroneous impressions and opin-
ions have been made and formed, their hurt is beyond
all cure, for the jurors may not speak out what may

weigh on their minds, but are become, themselves, dumb, passive witnesses.'' There is quite a review of authorities in 38 Cyc. 1840-1841, and the case of *Wright* v. *Carpenter,* 49 Cal. 601, cited there is overruled by *Hatton* v. *Gregg,* 88 Pac. (Cal.) 593.

In addition to the cases cited, 38 Cyc. 1841, cites also, *Preston* v. *Culbertson,* 8 Cal. 58; 2 Wigmore on Evidence, 1369, and especially 1 Thompson on Trials, 751, quoted in 38 Cyc. 1841; *Dennis* v. *Spence,* 80 Miss. 396; *Wilson* v. *Brown,* 94 Miss. 608.

II.   Counsel now argue that the words: ''Own, occupy and use said strip of land'' is an averment that the fee-simple title to the land is sought to be condemned, and argue that this cannot be legally done. This contention denies effect to the decision of the court on the former appeal, and is a narrow and unfounded interpretation of the use of the words ''own, occupy and use.'' Under the allegations of the petition these words only mean that the Jackson and Eastern is to ''own, use and occupy'' the easement to be acquired by the condemnation proceedings.

The former decision further foreclosed the contention as to the ulterior motive of the Jackson & Eastern, viz: as to its intention in making this connection to use the tracks and terminals of the Alabama & Vicksburg Railway Company at Jackson, all of which is set up in the bill and recited in great degree in the opinion, and yet when the opinion decides the real questions for consideration, it confines the decision to the right of the Jackson & Eastern to proceed by condemnation proceedings to obtain a connection with the Alabama and Vicksburg. All these and other propositions were foreclosed on the previous appeal and yet are made the subject of appellant's brief. See *Adams* v. *R. R. Co.,* 77 Miss. 315.

Argued orally by *R. H. Thompson* and *J. B. Monroe,* for appellant, and *Hardy Stone* and *Marcellus Green,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The case is here for the second time, it having been considered and decided by Division B of this court in April, 1923, reported in 131 Miss. 857, 95 So. 733, wherein this court reversed the judgment of the lower court and remanded the cause for a further hearing by the chancellor on the question of fact as to whether or not the proposed connection between the railroads could be reasonably made.  For a full statement of the facts and the law of the case, reference is now made to the former decision of this court.

. The suit is one to enjoin the Jackson & Eastern Railway Company from exercising the right of eminent domain to condemn an easement over the right of way of the Alabama & Vicksburg Railway, for connection purposes at Curran's Crossing in Pearl river valley (or swamp), near the eastern suburbs of the city of Jackson, and immediately east of Pearl river.

The Jackson & Eastern Railway Company sought the connection with the Alabama & Vicksburg Railway Company under the right given it by section 184, State Constitution of 1890, and section 4096, Code of 1906 (Hemingway's Code, section 6725), which provide in substance that every railroad company shall have the right to intersect and connect with any other railroad at any point on their routes, and that eminent domain may be exercised for this purpose.

The application for the condemnation of an easement for connection purposes by the appellee, Jackson & Eastern Railway Company, was enjoined upon several grounds, and, on a hearing to dissolve, the demurrer of the defendant to the injunction bill was sustained, and an

appeal was taken to this court, which resulted in a reversal and the cause was sent back for a hearing upon one question only, which we shall deal with more fully and specifically later on. Therefore, the law of the case was settled by the former decision, and nothing is left on the present appeal except to follow the law as announced and ascertain the correctness of the decree of the lower court under it, on the appeal now before us.

All of the questions of law now presented were involved in the former appeal and were passed upon by the court adversely to the appellant, except one point upon which it reversed the decree and remanded the cause for further hearing, on the question of fact with reference to the reasonableness of the proposed connection.

The bill alleged "that the place where the condemnation is sought to be made for the connection is improper and unsafe and dangerous for a point of junction of two railroads." That the connection would be dangerous to the public, and to the employees, and to the two railroads, on account of the connection being in the swamp on a trestle where the Pearl river overflows occasionally, and that the connection sought would have to be made by intersecting at a reverse curve in the main track of the appellant, Alabama & Vicksburg Railroad. And many other reasons are urged as showing that the connection at Curran's Crossing would be unreasonable, unduly dangerous, and detrimental to the general public, the railroads, and the railroad employees.

On the former appeal this court in reversing the decree of the chancellor sustaining the demurrer to the bill, held that the chancellor was in error in his view that the connection sought might be made at any point and under any circumstances; and the court said:

"However, we think the chancellor was in error in sustaining a demurrer to the bill for injunction. The right to make a physical connection by one railroad with that of another must be reasonably exercised. In other words,

the point of junction must be selected with due care with reference to the interest and welfare of both railroads, and with reasonable consideration for the safety and other rights of the general public, as well as of the two railroad companies.''

Upon a remand of the case, the chancellor proceeded to hear testimony at great length for both sides to determine the question, as directed by the opinion, as to whether or not the proposed connection at the point selected was reasonable with reference to the interest and welfare of both railroads, ''and was with reasonable consideration for the safety and other rights of the general public, as well as the two railroad companies,'' and whether the connection sought would be ''unduly endangering the public safety or the rights or interest of the other railroad company, considered with reference to the feasibility of the proper junction at a more reasonable point, having due regard to the circumstances, the interest of the two railroads, and that of the general public.''

Many witnesses testified for the appellant, Alabama & Vicksburg Railway Company, and their testimony went to establish the fact that the proposed connection would be unreasonable, improper, unduly dangerous to all concerned, and detrimental to both railroads, their employees, and the general public; and that a more reasonable connection could be made at a point a short distance farther east on the main line of the appellant, Alabama & Vicksburg Railway. Nothing would be gained by setting out in detail the testimony offered by the appellant on the question of fact presented, but it is sufficient to say that it was strong proof against the reasonableness and safety of the connection at the proposed point.

The appellee, Jackson & Eastern Railroad Company, offered many witnesses who testified positively that the proposed connection was reasonably safe, proper, and not unduly dangerous, and would not be injurious to the railroads, the employees, nor the general public interest.

These witnesses, if believed, established the fact by their testimony that the proposed connection was reasonable and entirely proper. Their testimony appears to be clear and positive on the subject.

The chancellor also personally visited the scene of the proposed connection, and examined the physical conditions, and observed the circumstances and general situation there. This information received by the chancellor, as trier of fact, we assume was of considerable value as an aid to him in determining the truth from the conflicting testimony of the witnesses on the opposite sides of the case; and the chancellor found the fact to be that the connection sought was reasonable and proper, and dissolved the injunction, from which decree the Alabama & Vicksburg Railway Company now appeals, and appellee cross-appeals.

Under the law of the case, all that was left to be tried by the lower court on the new trial was the question of fact as to the reasonableness, etc., of the proposed connection; therefore the point for our decision on the present appeal, is whether or not the finding of fact by the chancellor is manifestly wrong and should be reversed.

We have examined the testimony offered by the opposing parties, and, after a careful and lengthy consideration of it, we are convinced the finding by the chancellor was amply supported by the proof, and we see no reason for a reversal of the finding of fact on the question directed by the former opinion to be inquired into by the lower court.

It is ably urged by the appellant that a more reasonable and better connection could be made at other points on its line, or that the appellee should construct its road across Pearl river into Jackson and connect in that way with the appellant railroad. But we disagree with this contention for the reason that under the law, and as said by this court on the former appeal:

"We think it certainly could not be that any railroad

company can alone select a place of junction, regardless of circumstances or conditions. It has the right to intersect such railroad or cross it, whenever the conditions are such that it may do so without endangering unduly the public safety or the rights or interest of the other railroad company, considered with reference to the feasibility of the proper junction at a more reasonable point, having due regard to the circumstances, the interests of the two railroads, and that of the general public."

Therefore it follows that the railroad seeking the connection may exercise the right to connect at any point on the other railroad, so long as the proposed junction is reasonably safe and proper. And the chancellor having decided that question of fact in favor of the proposed connection, the connection of the appellant in this regard is without merit.

Another question presented now, which was also in the former appeal, though not discussed in that opinion, is that the injunction should have been sustained, because the application for the condemnation of the right of way of the appellant, sought to condemn the ownership or fee in the strip of land of appellant's main line for the proposed connection purposes, whereas the law permits only the condemnation of an easement for a connection.

We have examined and considered the language used in the application for the condemnation, and while the words "own, occupy, and use said strip of land, rights, privileges, and easements above described" would seem to indicate that it was an attempt to condemn the ownership in the strip of land to be used for connecting purposes, instead of the condemnation of an easement thereof, yet we think that, taking the application as a whole, the language should be construed to mean that only an easement is sought to be condemned.

Under the law an easement is all that could be secured by the condemnation proceedings; and we think that was all that was intended to be condemned, and the judgment

136 Miss.—47.

of condemnation must necessarily be limited to the acquirement only of an easement for the proposed connection. Therefore we hold that the application, when properly construed, seeks only an easement which the appellee, Jackson & Eastern Railway Company, is entitled to under the law.

The other questions in the case which deserve notice were passed upon in the former decision, and we shall not undertake to again review them. It is argued by counsel for the appellant that the president and owner of the Jackson & Eastern Railway Company, Mr. Neville, candidly states that he expects to connect with the Alabama & Vicksburg Railway at the point proposed and to endeavor to secure the use of the Alabama & Vicksburg track and bridge to cross over into the city of Jackson, instead of building his own bridge across the river and that he intends to construct his railroad terminal at the point of connection in the Pearl river swamp, and that he would be financially unable to build into Jackson by bridging Pearl river, and expects to avoid doing so by obtaining, at some time in the future, the right to use the Alabama & Vicksburg track into the city of Jackson. It is contended, as we understand it, that these future intentions, desires, and purposes of the Jackson & Eastern Railroad go to establish the fact that the proposed connection is unreasonable, and that the Jackson & Eastern Railway Company should be compelled to build its own line into Jackson, and that the question of financial ability, as decided by some of the courts, is not to be considered as a good reason for not building its own line across the river into the city, and that the connection in that way is the reasonable and proper one, instead of at Curran's Crossing.

But we do not think the argument is sound because the connecting railroad has the right under the law to make its connection at whatever point on the other railroad that it desired, and it is not for the other railroad

to dictate the point of connection, provided that such connection is reasonable and safe, etc.   Therefore the appellee has the right to connect at Curran's Crossing, instead of being compelled to run its line to another point for connection.   What Mr. Neville contemplates doing in the distant future with reference to his connections and facilities to get into Jackson is not involved here.

The decree of the lower court is affirmed, on direct and cross appeal.

*Affirmed.*

ANDERSON, J. (dissenting).

I am unable to agree with the majority of the court in this case.   When the case was before this court on the other appeal the court declared as part of the law of the case that the junction between the two railroads had to be made with regard to the interests of both railroads, as well as the public interests, and also with reference to its reasonableness and feasibility.   *A. & V. Ry. Co.* v. *J. & E. Ry. Co.*, 131 Miss. 857, 95 So. 733.

As I view the uncontradicted evidence in this case, only one reasonable conclusion can be drawn therefrom, and that is, the proposed junction between these two railroads is not reasonable nor feasible, and is against the public interest as well as the just interests of the railroads.   In considering whether the proposed junction ought to be made it should be compared to any other junction or junctions which the evidence shows might be made.   And if there appears to be another junction that could be made which would be more feasible and much more to the public interest and to the interests of the two railroads, then surely the proposed junction would come under the condemnation of the law of this case as laid down on the former appeal.

The evidence shows without conflict, that the proposed junction at Curran's Crossing will be a longitudinal con-

nection, thereby increasing the danger to employees of the roads; that it will be in Pearl river bottom which is about five miles wide and subject to one or more overflows annually which cover the swamp from the foothills on one side to the foothills on the other; that said junction will be on a ten-foot fill, and at a point near a much frequented public road crossing, and at a point between two railroad trestles of the Alabama & Vicksburg Railway Company, each about four hundred feet long.

The evidence given by Mr. Neville, the president of the Jackson & Eastern Railway Company, shows that although his company got a permit from the Interstate Commerce Commission to build its line of road in a westerly direction "to the city of Jackson," his company has no purpose of building further than this junction with the Alabama & Vicksburg Railway Company, that it has no purpose whatever of going into the city of Jackson over its own bridge and tracks. But the hope of his company is that sooner or later, by some sort of arrangement with the Alabama & Vicksburg Railway Company, his company will get into Jackson and there connect with the other railroad lines coming into Jackson, and this was the main purpose of his company in making Jackson the western *terminus* of its line of railroad. Mr. Neville admitted in his evidence in effect that, if his company were able financially to go into the city of Jackson over its own tracks and bridge across Pearl river, and there connect with the other lines of railroad entering the city of Jackson, the public interest as well as the interests of the two railroads would be better served. He frankly admitted that, instead of doing that, Curran's Crossing was selected by his company as a junction as a matter of economy to his company.

The law is, as I understand it, that in considering the public interest, as well as that of the two railroads, the matter of economy will not control. The predominant consideration will be the feasibility of the junction in con-

Sept. 1924] ALA. & V. RY. CO. *v.* JACKSON & E. RY. CO. 741.

136 Miss.]                    Dissenting Opinion.

nection with the public welfare and the interests of the two railroads. Economy as a consideration must stand aside for these things. As I understand, the courts which have passed on like questions have so held. Elliott on Railroads (3 Ed.), sections 1130 and 1225; *In re Pennsylvania Railroad's Appeal*, 93 Pa. 159. This junction at Curran's Crossing, under the evidence, will be the western *terminus* of the Jackson & Eastern Railway Company's line. There is no pretense to the contrary. The evidence shows what a railroad terminal is, but none was necessary because the court judicially knows what it is. A railroad terminal at Curran's Crossing would mean switch tracks, storage tracks, and a freight house. In other words railroad yards in Pearl river bottom on a ten-foot fill in a few hundred yards of the city of Jackson where, by entering, connection could be made with the various railroad lines entering said city. The thing just looks to me next to impossible. I do not know how otherwise to characterize it.

The bill of the Alabama & Vicksburg Railway Company ought to have been sustained in my judgment on another ground, and that is that the eminent domain application of the Jackson & Eastern Railway Company failed to sufficiently describe the right or easement it sought to condemn. It is unquestioned that the Jackson & Eastern Railway Company has no right under the statute to condemn the fee in the tracks and right of way of the Alabama & Vicksburg Railway Company for the junction. Where a lesser interest than the fee in land is sought to be appropriated in a condemnation proceeding, the lesser interest must be defined with such certainty as to apprise the owner of the nature and extent of the interest which is to be taken, and also with such certainty as to enable the jury to intelligently and according to law assess the compensation to be paid for the interest taken. *Pontiac Improvement Co.* v. *Board of Commissioners*, 104 Ohio St. 447, 135 N. E. 635, 23 A. L. R. 866. Certainly the pro-

ceedings ought to be definite enough as to description of the right sought to be taken as that the owner of the fee will know how much he will have left after the proposed easement is taken. This is also necessary to enable the taxing authorities to properly assess the property. Unless what is taken by the condemnation proceedings is made definite, how could the taxing authorities determine what assessment value to put on what was taken and what was left?