No. 31,377

The Board of Administration of the State of Kansas et al., *Appellants,* v. The Chicago, Burlington & Quincy Railroad Company, *Appellee;* The Chicago, Rock Island & Pacific Railway Company, *Defendant.*

(27 P. 2d 720.)

Opinion filed December 9, 1933.

*Charles W. Steiger, R. O. Mason* and *Frank P. Eresch,* all of Topeka, for the appellants.

*Luther Burns, J. E. DuMars,* both of Topeka, *L. H. Wilder,* of Norton, and *J. W. Weingarten,* of Omaha, Neb., for the appellees.

The opinion of the court was delivered by

Johnston, C. J.: The state board of administration instituted a proceeding before the public service commission to require the Chicago, Burlington & Quincy Railroad Company and the Chicago, Rock Island & Pacific Railway Company to build a transfer connection between the two railroads at the state tuberculosis sanatorium, about four and one-half miles east of Norton, where the two railroads parallel each other. On a hearing the public service commission granted the order and fixed the time within which the transfer connection should be made. The order included the provision that cars placed on the connection by one company should be promptly taken up by the other and delivered to the sanatorium. It further provided that each company should install all necessary connections through and over its own tracks and at its own expense.

The Chicago, Burlington & Quincy alone appealed to the district court of Norton county for a review of the order of the public service commission. That appeal was heard, when the court made findings of fact and law and decided that the order of the commission was void, because the public service commission of the state

of Kansas was without jurisdiction, power or authority to enter said order. The jurisdiction, power and authority to require interstate railroad companies or railroads engaged in interstate commerce to construct, maintain and operate track connections, transfer tracks or interchange tracks over which carloads may be transferred from one railroad to another is solely and exclusively with the interstate commerce commission, under paragraphs 18, 19 and 20, section 1, U. S. C. A., title 49, and paragraphs 3 and 4, section 3, U. S. C. A., title 49.

In the findings of fact, about which there is no controversy, the Chicago, Burlington & Quincy company operates a railroad through a number of states and is a common carrier of passengers and property in interstate commerce. It has a branch line which extends 77.79 miles from Republican, Neb., to Oberlin, Kan., and passes through the county of Norton, at the point in question. The Chicago, Rock Island & Pacific company owns and operates a line extending through a number of states and is engaged in the transportation of passengers and property as a common carrier in interstate commerce. The sanatorium is located on the north side of the defendant road about four and one-half miles east of Norton, and is served by a spur track owned by the state of Kansas, connecting with the defendant railroad, and by means of which carload freight is transported by the defendant company, but the Chicago, Rock Island & Pacific company has no connection at the sanatorium or in the vicinity by any transfer or interchange track, with the result that cars may not be interchanged·from one railroad to the other except at the town of Norton. The sole question presented on this appeal is whether such a transfer connection as was ordered is beyond the jurisdiction and power of the public service commission and may not be required except by the interstate commerce commission.

The distance between the parallel tracks of the two railroads at the sanatorium is only ninety feet. It is to be noted that the order does not authorize either railroad to enter upon the line of the other, but each is to set cars destined for the sanatorium upon the transfer track to be picked up and carried to the institution by the other company. The transportation act provides that:

"No carrier by railroad subject to this act shall undertake the extension of its line of railroad . . . unless and until there shall first have been obtained from the commission a certificate that the present or future public

convenience and necessity require or will require the construction or operation, or construction and operation of such additional or extended line . . ." (41 U. S. Stat. ch. 91, sec. 402 [18].)

And then follows the exception that—

"The authority of the commission conferred by paragraphs 18 to 21, both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching or sidetracks located or to be located wholly within one state," etc. (41 U. S. Stat., ch. 91, sec. 402 [22].)

No order has been made by the interstate commerce commission requiring or authorizing a junction or transfer connection between the lines of the two railroad companies. Each is engaged in interstate as well as intrastate commerce. The provisions of the transportation act cited in the judgment of the trial court confer on the interstate commerce commission power and control over constructions and extensions and the like, between interstate railroads, including the one of terminal facilities and tracks. The only exception or exclusion from its jurisdiction is "spur, industrial, team, switching or sidetracks located or to be located wholly within one state or of street, suburban or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation."

The connection in question is a short one designed to make a traffic connection for the interchange of business between the two carriers necessarily affecting interstate commerce. A number of cases cited by counsel approach the question at different angles as to the power of the federal and state commission to control the matter of traffic connections between railroads engaged in intrastate and interstate business, but there is a late decision of the United States supreme court on the subject which is a controlling authority on the interpretation of the transportation act. (*Alabama Ry. v. Jackson Ry.*, 271 U. S. 244.) It was there held that the establishing of a junction or transfer connection which might affect or imperil interstate commerce was exclusively within the jurisdiction of the interstate commerce commission. The court, after considering the purpose of the transportation act relating to the making of physical connections between railroads engaged in interstate commerce, concluded that the matter of danger and the interference with interstate commerce obviously led to the enactment giving the federal commission exclusive jurisdiction. The second syllabus of the decision reads:

"Since the enactment of the transportation act, 1920, the jurisdiction to determine whether a junction may be established between the main lines of

two railroads, both engaged in interstate as well as local commerce, is exclusively in the interstate commerce commission."

The court in effect holds that the power to determine whether or not the state's action proposed to be taken will obstruct interstate commerce inheres in the United States as an incident of the power to regulate commerce. In the course of the decision the court remarked:

"It was not until,transportation act, 1920, c. 91, 41 Stat. 456, conferred upon the commission additional authority, that it acquired full power over connections between interstate carriers. By paragraphs 18-20, added to section 1, it vested in the commission power to authorize constructions or extensions of lines, although the railroad is located wholly within one state; and by paragraph 21 authorized the commission to require the carrier 'to extend its line or lines.' By paragraph 4 of section 3 it empowered the commission to require one such carrier to permit another to use its terminal facilities 'including main-line track or tracks for a reasonable distance outside of such terminal.'" (p. 249.)

The board of administration of the state contends that the connection required falls within the exceptions in the act, and that the connection should be regarded as a switch rather than an extension. While there must be a switch at each end of the connection, the connection itself cannot be regarded as a mere switch nor a crossing, nor can it be classed as a spur, team or sidetrack or an industrial track. It was really a traffic connection for the interchange of business, a part of which was interstate, and under the federal act the authority to control the matter was exclusively with the federal commission. So far as seen since the decision in the Alabama & Vicksburg case, no courts have held that state commissions have jurisdiction to require the establishment of transfer, interchange or connecting tracks between railroads engaged in interstate commerce. It appears that the Alabama & Vicksburg case originated in Mississippi, and when the supreme court of that state first passed upon the question it held that the state authority had jurisdiction to order the connection, as the order did not materially affect interstate commerce, but on a rehearing, after the decision of the Alabama & Vicksburg case, it came to a different conclusion and set aside the first decision made, saying:

"When the cause first came before this court, we held that the federal government had not taken exclusive jurisdiction of connections between railroad lines engaged in interstate commerce, and that the connections sought by the Jackson & Eastern Railway Company did not materially affect interstate

commerce, and that the state authorities had jurisdiction to order a connection between the lines of railroad. See *A. & V. Railway Co. v. Jackson & Eastern Railway Co.*, 131 Miss. 857, 95 So. 733; also, *A. & V. Railway Co. v. Jackson & Eastern Railway Co.*, 136 Miss. 726, 101 So. 553.

"In the opinion rendered on the 24th day of May, 1926 (271 U. S. 244, 46 S. Ct. 535, 70 L. Ed. 928), the supreme court of the United States held that congress had taken complete control of the subject matter, and that no action could be taken until the approval of the interstate commerce commission had been obtained. Inasmuch as such consent had not been obtained, it follows that the connection could not lawfully be coerced by the state court, and our former ruling is set aside and annulled, and judgment will be entered in accordance with a motion making the injunction perpetual until such connection is ordered by the interstate commerce commission." (*Alabama & V. Ry. Co. v. Jackson & E. Ry. Co.*, 144 Miss. 702, 703.)

To the same effect is the *Citizens of Pipestone v. C. M. & St. P. Ry. Co.*, 167 Minn. 174, in which it was said:

"As we read this latest utterance of the supreme court the compelling of a junction between two railroads, carriers of interstate commerce, so that cars may be transferred or routed from one to the other, as was petitioned for in the case at bar, comes within the sole jurisdiction of the interstate commerce commission.

"We are unable to see any substantial difference in the situation presented here from that which existed in *Alabama & V. Ry. Co. v. Jackson & E. Ry. Co.*, supra. Therefore, the objection by appellant to our state railroad and warehouse commission assuming jurisdiction to act in the premises should have been sustained." (p. 178.)

See, also, *People v. Public Service Commission*, 233 N. Y. 113.

Reference is made by the plaintiff to the decisions made in *Union Pac. Rld. Co. v. Missouri Pac. Rld. Co.*, 136 Kan. 166, 13 P. 2d 276, and *Missouri Pac. Ry. Co. v. Union Pac. Ry. Co.*, 60 F. 2d 126, and *Missouri Pac. Rld. Co. v. Chicago Great Western Rld. Co.*, 137 Kan. 217, 19 P. 2d 484, but the crossing proposed to be built in that project was held to be a switch within the meaning of the transportation act, and was excluded from its provisions. Some of the language used in those decisions may be contrary to the decision in Alabama-Jackson case, but the rule of that case must be followed, which necessarily results in the affirmance of the judgment of the district court in the present case.

The judgment is affirmed.

HUTCHISON, J., not sitting.