(No. 16018.—Judgment reversed; orders of commission set aside.)

The Cleveland, Cincinnati, Chicago and St. Louis Railway Company, Appellant, *vs.* The Commerce Commission *ex rel.* The Dering Coal Company *et al.* Appellees.

*Opinion filed February 17, 1925.*

1. Public utilities—*what determines whether railroad track is a spur-track or connecting line.* Whether a railroad track to a private industry is a spur-track or a connection between two or more railroads and an extension of one or all of them depends upon the use to which it is adapted, and each case must rest largely upon its own facts.

2. Railroads—*when a proposed railroad track connecting with coal mine is not a spur-track.* A proposed railroad track leading from a coal mine to the main line of a railroad three and one-half miles away cannot be said to be a private spur-track, where the coal mine is located on the line of another railroad and the proposed track will effect a connection between the two railroad lines, and such a track, when allowed to be constructed by proper authority, will become a part of the public railway highways of the State, regardless of any limitations of its use in the contract between the mining company and the railroad company desiring to make the connection.

3. Same—*what constitutes extension of a railroad—Commerce Commission.* Where the effect of allowing a coal mining company to build a railroad track from its mine to another railroad line will be to make a connection between the latter and a railroad line upon which the mine is located, the building of the proposed track constitutes a railroad extension, which is not within the jurisdiction of the Illinois Commerce Commission where the two roads to be connected are interstate railways.

4. Same—*when constitutional provision for connecting private industry with railroad does not apply.* The provision of section 5 of article 13 of the constitution that "all railroad companies shall permit connections to be made with their track, so that any such consignee, and any public warehouse, coal bank or coal yard, may be reached by the cars on said railroad," does not apply where the industry seeking connection with a certain railroad is already served by another company and making the proposed connection would amount to an extension or connection of two railroad lines.

5. Same—*constitution does not require railroad to serve a point off its lines.* In the absence of constitutional or statutory provisions a railroad cannot be compelled to receive or deliver freight

from or to a point off its lines, and section 5 of article 13 of the constitution does not require a railroad company to permit track connection with a coal mine off its road.

6. SAME—*section 45 of Public Utilities act does not authorize connection of interstate railroads.* Section 45 of the Public Utilities act, providing for connection of the private industry of a shipper or receiver of freight with an existing railroad line, does not apply where the effect of such connection is to join the lines of two interstate carriers, constituting an extension of their lines, as such connection is under the sole jurisdiction of the Interstate Commerce Commission.

7. SAME—*Commerce Commission cannot authorize private corporations to build railroads.* The Illinois Commerce Commission has no powers except those granted it by the Public Utilities act, and that act gives the commission no power to authorize private corporations to build railroads.

8. MINES—*when section 1 of Mines act does not authorize construction of railroad track.* Section 1 of the Mines act, authorizing any owner or operator of a mine to condemn property for the construction of a road, railroad or ditch so that the mine may be conveniently worked, does not authorize the building of a railroad track to connect with the main line of a railroad three and one-half miles away when the mine is located on and connected with the line of another railroad, the only claim being that the maximum output of the mine is limited by insufficient cars on the latter railroad.

9. SAME—*a coal mining corporation is not a public utility.* A coal mining corporation is not a public utility but is a private enterprise, and it possesses no charter powers to build a railroad.

APPEAL from the Circuit Court of Saline county; the Hon. A. E. SOMERS, Judge, presiding.

GEORGE B. GILLESPIE, (H. N. QUIGLEY, P. J. KOLB, and M. J. WHITE, of counsel,) for appellant.

MILEY & COMBE, C. B. CARDY, JAMES M. SHEEAN, and P. J. WIMSEY, for appellee the Dering Coal Company.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant seeks review of a judgment of the circuit court of Saline county affirming two certain orders of the Illinois Commerce Commission, one of which granted per-

mission to the appellee the J. K. Dering Coal Company to construct and maintain at grade across the tracks of the Illinois Central Railroad Company and across the tracks of the Southern Illinois Railway and Power Company and across three highways in Saline county, a railroad track. The proposed track was to extend south from the coal mine of the coal company a distance of over three and one-half miles, and across the two railroads and the three highways mentioned, to the right of way of the appellant, hereinafter called the Big Four. The second order appealed from required the appellant to construct, maintain and operate on its own right of way a switch-track connecting the track authorized by the first order with the main track of appellant. The physical situation of the parties affected by these orders is shown by the following plat:

It will be seen by examining the plat that the Big Four railroad extends in a southwesterly direction through Saline county. A branch line of the Illinois Central Railroad Company (hereinafter referred to as the Illinois Cen-'

tral) extends from the city of DuQuoin, Illinois, in a southeasterly direction through the property of the Dering Coal Company to Eldorado, where it connects with the Big Four. On the Big Four, southwest of Eldorado eight or ten miles, is Harrisburg, where the principal classification yards of that road in that section are located, and approximately half-way between Harrisburg and Eldorado is what is shown on the plat as the Wasson Coal Company mine. Both the Big Four and Illinois Central are interstate carriers. The Southern Illinois Railway and Power Company (hereinafter referred to as the Traction line) is an electric interurban railway extending along the northwest side of the Big Four and parallel therewith from Eldorado to Carrier Mills, a distance of twenty miles southwest. The Dering Coal Company mine is located on the Illinois Central at a point two and one-half miles northwest of the junction of the Big Four and the Illinois Central at Eldorado. The coal company owns 3670 acres of coal lands. The point of these lands nearest to the Big Four is approximately one-half-mile from it. The evidence of the appellees shows that the maximum daily production of the Dering mine is about 3500 tons, though its actual production has been between 2000 and 2500 tons.

The track sought to be laid is that shown on the plat as extending in a southwesterly direction from the tipple of the Dering coal mine across the Illinois Central railroad and thence south to and across the Traction line, connecting with the Big Four at a point southwest of the Wasson mine. It appears that appellant was not made a party to the petition (known as No. 12819) for permission to cross the railroads and highways involved, although that petition states that the coal company desires to connect with appellant's road. It further appears that appellant did not discover that such a petition had been filed until after the entry of the order therein. It then filed a motion with the commission to set aside the order and for

leave to appear and defend against the petition. The coal company thereupon filed a further petition (known as No. 12891) to require the Big Four to connect its line with the proposed track when constructed. The two petitions were then consolidated for hearing before the commission.

The first petition (No. 12819) was filed on November 25, 1922, by the Illinois Central, the Traction line and the Dering Coal Company as their joint petition, and sets out that the petitioners had agreed among themselves as to the manner in which the crossing should be constructed and the expense thereof met, and that such agreement would be reduced to writing and filed with the commission. The petition alleges that the entire cost of construction of the track will be borne by the coal company, and prays that the commission permit the track to be constructed and operated as a mine spur-track from the mine of the coal company across the Illinois Central and the Traction line to the Big Four. With this petition were filed a plat of the proposed track and the consent of the highway commissioner to the crossing of the highways. On December 14, 1922, the commission entered the order on that petition complained of, finding that the construction of the track was necessary to facilitate movement and distribution of coal cars from the coal company's mine and would not unnecessarily impede or endanger traffic upon the railroads to be crossed; that the parties had agreed among themselves as to the construction of the crossing and the expense connected therewith, and permission was granted to construct this track across the railways and highways mentioned.

The second petition (No. 12891) was filed December 27, 1922, directed against appellant alone. After setting out that the coal company needed connection with appellant's line for distribution of coal and that permission had been granted to construct the track referred to in petition No. 12819, it prays for an order requiring the Big Four

315—30

to construct, maintain and operate a switch-track connecting the proposed track of the petitioners with the tracks of the Big Four in accordance with a plat filed. The appellant filed an answer denying the reasonableness or necessity of such connection, alleging that the construction of the so-called mine lead-track was to obtain additional car supply, and denying the jurisdiction of the commission to authorize its construction. Appellant's counsel also moved to dismiss the petition for want of jurisdiction of the Illinois Commerce Commission, for the reason that it was, in substance, a petition for car distribution and supply, which is controlled by the Interstate Commerce Commission, and for the further reason that it was a proceeding to establish a connection between two railroads and to extend the lines of each within the meaning of the law, which matter is also within the sole jurisdiction of the Interstate Commerce Commission under the Federal Transportation act.

Evidence was heard touching the question of the necessity for this additional service for the coal company. Its evidence was to the effect that the track in question is necessary by reason of lack of cars and service; that the normal maximum output of its mine cannot be had without it. The evidence of appellant shows that it has expended the sum of $16,000,000 in procuring equipment and facilities for handling coal in the territory served by it; that in order to handle the additional coal from this mine it would be necessary for appellant to enlarge its equipment and to extend its classification yards at Harrisburg; that service rendered to this mine or to other industries and businesses which may locate along the proposed track would seriously limit the service now being afforded to the industries on its own line, and that it would be unreasonable to require it to take on such further extension.

At the close of petitioners' evidence, and at the close of all the evidence, counsel for appellant again moved to dismiss these petitions on the ground that the evidence

showed that the proposed track would be a railroad connecting the Illinois Central and the Traction line with appellant and would amount to the extension of such lines, and that this was a matter over which the Interstate Commerce Commission had exclusive jurisdiction. This motion was also based on the ground that the coal company was attempting to construct a railroad to be operated for general commercial purposes without charter powers so to do.

The record shows that this line of the Illinois Central is a branch of a very large system of railroads having a number of branch lines supplying numerous other coal mines in that region. No complaint to the Illinois Central arising out of lack of cars appears to have been made or any proceedings had to secure more service from it. It is not shown that the coal company is unable to reach any desirable market with the service given by the Illinois Central. It also appeared on the hearing that the coal company had entered into a contract with the Illinois Central to build the proposed track at the expense of the coal company. By this contract the coal company gave to the Illinois Central the right to operate over the track with its trains and cars, the right to extend other tracks from it to other mines and properties, to change the grade of the track, to maintain additional crossings, to have the right of way in operation of its trains over the crossings, and to connect this track with its main line track. The agreement also provided that the Illinois Central was to maintain the track in good order at the expense of the coal company; that the Illinois Central agreed to operate its trains over this track in such manner as not to unreasonably interfere with the use thereof by other companies. The contract also provided that when the coal company no longer desired the use of the track the Illinois Central could purchase it, if it desired, at the actual cost thereof. The coal company by this contract was not permitted to sell the track to any other railroad company without the consent of the

Illinois Central. The coal company also entered into a contract with the Traction company providing for a crossing over its railway and a wye connection with it and for the operation of the track jointly with the Illinois Central for passenger and freight service, conferring on the Traction company privileges similar to those granted to the Illinois Central but subject thereto.

At the close of the hearing of the evidence the petitioners in petition No. 12819 moved to modify the order entered on December 14, 1922, in that cause by limiting the use of the proposed track to that of a private mine-track. This was done and the order of December 14 in that cause otherwise adhered to. The commission also entered an order in No. 12891 confirming the building of the track and ordering the connection with appellant, but provided in both orders that notwithstanding the contract between the coal company and the railway companies, the track, when built and connected with the Big Four, should not be used for any other purpose than to serve the mine of the coal company until further use is granted by the commission in a proper proceeding.

Appellant contends that the recital in these orders is of no validity, for the reason that the track, when constructed, will become a public track, and the commission has no power to limit the use of it. It also contends that the proposed track is not a private or spur-track but is a track connecting three railways and is an extension of the lines of each; that such a track cannot be laid without authority from the Interstate Commerce Commission under the Federal Transportation act, under which act the authority of that body is supreme. It is also contended that the contracts between the coal company and the Illinois Central and Traction line constitute leases, and that the coal company has no authority under its charter to build, own, operate or lease a railroad and no such power can be conferred on it by the commission. Appellees contend that

this is a private spur-track; that under sections 45 and 58 of the Public Utilities act, and under section 1 of the Mines act, it has a right to construct the track, and that under section 5 of article 13 of the State constitution and section 45 of the Public Utilities act appellant is required to permit connection with its railway.

The first question involved in the case is whether or not this track, when constructed, would be a spur-track, or, in fact, a railroad extension. If the former, jurisdiction lies in the Illinois Commerce Commission to enter the orders entered herein, provided the evidence shows a proper case; if the latter, the commission has no jurisdiction, as jurisdiction over such matters is vested in the Interstate Commerce Commission by the Federal Transportation act. It is argued that this track is for the purpose, only, of supplying additional railway service to the mine of the coal company. An examination of the plat discloses that the coal company's mine is not on the Big Four and therefore cannot be considered an industry on that road. It is also shown by the plat and the evidence that the proposed railroad is over three and one-half miles in length, while the distance from the coal company's mine to the Big Four at Eldorado is about two and one-half miles. Whether this track is a spur-track or a connection between two or more railroads and an extension of one or all depends upon the use to which it is adapted. Standard lexicographers define a "spur-track" as a track leading from a line of railway and connected with it at one end only, giving as a synonym "stub-track." It is a matter of common knowledge, however, that the term "spur-track" is given a somewhat wider application. The line of demarkation between a spur-track and a branch or connecting line of a railroad, or a railroad extension, is not always easy to discern, and each case must rest largely upon its own facts.

In *Detroit and Mackinac Railway Co.* v. *Boyne City Railroad Co.* 286 Fed. 540, the term "spur-tracks," as dis-

tinguished from extensions and connecting or new lines, as used in the Transportation act, was held to mean tracks used for loading, re-loading, storing and switching cars, merely incidental to the regular train haul, while the latter are tracks over which there are to be train movements in the sense that such movements are actual transportation hauls from the shipper to the consignee. The Boyne City railroad was a line extending from Alpina, Michigan, on the west shore of Lake Huron, in a general westerly direction to Boyne City, on the east shore of Lake Michigan. For a distance of about ten miles west of Alpina this railroad runs in a southwesterly direction, thereafter turning west to its destination. At a point five miles southwest of Alpina the Detroit and Mackinac railway, extending directly from the west, crosses the Boyne City railroad, thereafter turning northeast and continuing parallel with that road into Alpina. On the Detroit and Mackinac railway, three and three-fourths miles west of this crossing, is a shale quarry. The Boyne City Railroad Company, by agreement with the Huron Portland Cement Company of Alpina, which owned the quarry, sought to build a track from a point on its main line eighty rods north of the intersection with the Detroit and Mackinac railroad west to the quarry. Pursuant thereto the Boyne City Railroad Company entered into certain traffic contracts with the cement company concerning the hauling of shale from the quarry to the cement company's plant in Alpina. Injunction was sought to restrain the building of this track, upon the ground that it amounted to an extension of the Boyne City railroad and permission of the Interstate Commerce Commission to do so had not been obtained. The question in the case was whether or not the trackage sought to be constructed was a spur-track or an extension of the Boyne City railroad. It will be noted that the proposed track in that case extended from the main line of the Boyne City railroad to the quarry and ended there, so that it was

a track joining a railroad at but one end. The court in that case considered, however, the purposes to which the track was adapted and was to be put, and held that it was an extension of a railway line and not a spur-track.

Considering the contracts entered into between the coal company and the Illinois Central and Traction line, it is evident that the parties thereto contemplated a use of the proposed track by the Illinois Central and Traction line much wider than that of bringing coal from the coal company to transportation lines. The right granted by the coal company to the Illinois Central to operate its trains on the track and to build spur-tracks, and the right granted to the Traction line to operate its freight and passenger cars over this track in conjunction with the Illinois Central, evidences an intention to give to these roads, as the necessity arose, a much wider use of the proposed tracks. The terms of these contracts were practically as broad as those of a lease. These contracts, and the fact that this track constitutes an actual physical connection of three railroads and is completely adapted to the extension of their lines, make it clear that if built it could not be said to be a private spur-track merely for railway service to the coal company's mine.

The question then arises whether or not this track would, in effect, be an extension of any or all of these railroads. Under paragraphs 18 to 22 of section 1 of the Interstate Commerce act, (24 Stat. at Large, 379,) commonly called the Transportation act, no extension of railway lines can be built or operation thereon had without a certificate of convenience and necessity from the Interstate Commerce Commission, and if the construction and connection of this proposed track amount to an extension of a railway line within the meaning of the Transportation act, the building of such track and the connection here sought are matters over which the Illinois Commerce Commission does not have jurisdiction, sole jurisdiction in such

matters being vested in the Interstate Commerce Commission.

In *Ridge Coal Mining Co.* v. *Missouri Pacific Railroad Co.* 62 I. C. C. 259, the complainant mining company sought by petition before the Interstate Commerce Commission to require the Chicago, Burlington and Quincy Railroad Company and the Missouri Pacific Railroad Company to accord to the complainant the status of a joint mine. Complainant's mine was located on the Missouri Pacific railway system. It was alleged that the Chicago, Burlington and Quincy had by trackage agreements extended its service to a number of mines competitive with the complainant which it did not reach over its own rails, and that the complainant would be unduly prejudiced if it were not likewise given a joint mine status. The trackage agreements referred to were shown to have been made before the passage of the Transportation act. The Interstate Commerce Commission in that case, in denying the petition, held that service by the Chicago, Burlington and Quincy under a joint mine status or trackage agreements to mines not on its line was in legal effect the substantial equivalent of the extension of its rails to such mines, and that such could not be required without a certificate of convenience and necessity, citing *Commercial Club* v. *Great Northern Railway Co.* 24 I. C. C. 96, and *Penick & Ford* v. *Director General,* 61 id. 173. It will be noted that there was in that case no attempt to force an actual physical connection with the railroad but to secure joint mine privileges to a mine not on the Chicago, Burlington and Quincy.

It would seem clear under these holdings that whether such connection is a joint mine status by trackage agreement or by order of the Interstate Commerce Commission, or is an actual physical connection by bringing a track to the right of way of the road sought to be connected, the result is the same. Both constitute an extension of the latter road to an industry not on its line and are matters

within the exclusive control of the Interstate Commerce Commission under the Transportation act. While rulings of the Interstate Commerce Commission are not binding on this court, we think them particularly persuasive here, where the matter of this railroad connection is bound up with the whole subject of interstate traffic, of which that commission has jurisdiction.

It appears that the coal company, prior to the institution of the proceedings herein, sought by petition before the Interstate Commerce Commission, against the Illinois Central and the Big Four, to secure an order declaring a joint mine status as to its mines. (*Dering Mines Co.* v. *Director General*, I. C. C. No. 10945.) At that time it was operating a mine on the Big Four eight-tenths of a mile northeast of Eldorado, known as mine No. 3, together with the mine involved in this proceeding. The petition alleged that failure on the part of the Big Four and the Illinois Central to accord such status resulted in unjust discrimination against the petitioner. The Big Four alone defended against the petition. The evidence showed that it had expended over $16,000,000 in improving its facilities and providing equipment for handling coal traffic in the southern Illinois coal fields, and that it desired to use its equipment and facilities in the service of shippers to whom it was already under obligation. The Interstate Commerce Commission denied the petition, holding that, in effect, service to a mine not on the line of a carrier was the substantial equivalent of an extension of its rails to the mine, and that under the *Ridge Coal Mining Co. case, supra,* such should not be ordered except in case of public convenience and necessity and where the added burden would not work hardship on the road or its patrons.

Appellant argues that the proceedings in the two petitions under consideration here are but attempts to secure indirectly through this forced connection what the coal company failed to secure in its proceeding before the Interstate

Commerce Commission just referred to, and that the fact that the Illinois Central did not defend in the petition before the Interstate Commerce Commission and is one of the petitioners in petition No. 12819 under a contract with the coal company indicates that this is an attempt to secure an extension of the line of the Illinois Central without first obtaining a certificate of convenience and necessity from the Interstate Commerce Commission. Regardless of the motives of the parties, we see no substantial difference, in effect, between the thing sought in the *Ridge Coal Mining Co. case* and the case just referred to on the one hand, and the petitions under consideration here on the other. Both petitions in this case must be held to have been filed for a single purpose. Both seek, in effect, one thing, and that is one under the sole jurisdiction of the Interstate Commerce Commission, and is therefore one of which the Illinois Commerce Commission has no jurisdiction.

But appellees urge that the contract for use of the proposed track cannot be carried out because of the limitation in the order of the commission that it shall be used only for the purpose of hauling the coal of the coal company unless the consent of the commission is had, and that therefore the track can be considered nothing more than a private spur-track. Regardless of the contract, it is well settled in this State that a railway track built and connected as here proposed becomes thereby a part of the public railway highways of the State, free and open to the use of the public. (*St. Louis, Springfield and Peoria Railroad* v. *Commerce Com.* 309 Ill. 621; *Public Utilities Com.* v. *Smith,* 298 id. 151.) It would, when built, be open to the use of any and all shippers upon adjustment by the commission of the proportionate cost thereof. The limitations in the orders of the commission are therefore of no avail.

The coal company also urges that it has a right to this connection under section 5 of article 13 of the constitution of Illinois. This section provides, in part, as follows: "All

railroad companies shall permit connections to be made with their track, so that any such consignee, and any public warehouse, coal bank or coal yard may be reached by the cars on said railroad." The appellees cite the case of *Chicago and Alton Railroad Co.* v. *Suffern,* 129 Ill. 274, as authority for the contention that that section of the constitution is applicable here. It will be noted, however, that in that case the industry seeking connection with the defendant railroad was located on the line of that railroad. Such was also the situation in the case of *Public Utilities Com.* v. *Lake Erie and Western Railroad Co.* 277 Ill. 574, cited by appellees. Such is not the case here. The Dering coal mine is not located on the Big Four, and we are of the opinion that it was not within the intention of the framers of section 5 of the constitution referred to, to give to an industry already upon a railroad the right to compel a connection with another railroad upon which it is not located, where, as here, such connection would be, in effect, extending the line of the railroad affected. The purpose of section 5 is to afford a coal mine, warehouse or other shipper reasonable facilities for shipping and is not intended to apply to cases where such facilities already exist. It was early held, and is the general rule, that in the absence of constitutional or statutory provisions a railroad cannot be compelled to receive or deliver freight from or to a point off its lines. (*People* v. *Chicago and Alton Railroad Co.* 55 Ill. 95; *Hoyt* v. *Chicago, Burlington and Quincy Railroad Co.* 93 id. 601.) The latter case does not, as supposed, hold that the constitutional provision referred to compels a railroad to permit track connection with a coal mine off its road. The holding of that case was that a railroad could not be compelled to deliver freight to a warehouse off its own line. No cases have been cited, and we know of none, holding that a coal mine already having shipping facilities may by authority of this section compel a connection with a second railroad not adjacent to such mine, where to do

so would, as in this case, connect two or more railroads and amount to an extension of them. We are of the opinion that section 5 was not intended to apply to such a case.

Appellees also urge that under section 45 of the Public Utilities act they are entitled to this connection with appellant. That section provides as follows: "Every railroad company, upon the application of any corporation or person, being a shipper or receiver or contemplated shipper or receiver of freight, or of any corporation, person or municipal corporation owning, operating or controlling any wharf or harbor facilities, for a connection between the railroad of such railroad company and any existing or contemplated track, tracks or railroad of such corporation, person or municipal corporation, shall make such connection and provide such switches and tracks as may be necessary for that purpose and deliver and receive cars thereover; *Provided,* that such connection is reasonably practicable and can be installed and used without materially increasing the hazard of the operation of the railroad with which such connection is sought, and that the business which may reasonably be expected to be received by such railroad company over such connection is sufficient to justify the expense of such connection to such railroad company." This section cannot be held to apply to situations coming under the Federal Transportation act. As to such the latter act is supreme. Nor can it be said that the legislature in enacting section 45 sought to confer on the Illinois Commerce Commission jurisdiction of those matters coming under the Federal Transportation act. The steam railways involved here are interstate carriers. That which amounts to an extension of their lines is under the sole jurisdiction of the Interstate Commerce Commission, and the Illinois Commerce Commission is without jurisdiction.

Nor is section 1 of the Mines act applicable here, as appellees suppose. That section provides, in part, as follows: "That whenever any mine or mining place shall be.

so situated that it cannot be conveniently worked without a road or railroad thereto, or ditch to drain the same or to convey water thereto, and such road, railroad or ditch shall necessarily pass over, through or under .other land owned or occupied by others, the owner or operator of any such mine or mining place may enter upon such lands, and construct such road, railroad or ditch, upon complying with the law in relation to the exercise of the right of eminent domain." The language of this section authorizes a mining company to build a track leading to its mine where it is so situated that it cannot be conveniently worked without it. There is not here the question of the right of a mining company to build a railroad track in order to have railroad, facilities, and it is not intended by that act to give a mining company power to build a connecting track between two railroad lines, or to force a connection with a railroad on which it is not located, without sanction of the legal authority controlling that matter. To so construe this section would be to render the act invalid, as attempting to oust Federal jurisdiction under the Transportation act. Moreover, this mine can be, and is being, conveniently worked. The only claim of the coal company is that its maximum output is limited by insufficient cars.

A coal corporation is not a public utility, (Public Utilities act, sec. 10,) but is a private enterprise. It possesses no charter powers to build a railroad. It is given power to build railroad tracks by the statute just quoted only in the emergency there specified. The Illinois Commerce Commission has no powers except those granted it by the Public Utilities act. That act gives it no power to authorize private corporations to build railroads. Nor does it avail anything to say that under the contract between the parties the Illinois Central is to build the track. The evidence shows that the coal company is to pay for and own it. The railroad company is but the agent of the coal company in the building of the track.

The appellees argue that the authority of the Illinois Commerce Commission is established in this case by the decision of this court in *St. Louis, Springfield and Peoria Railroad* v. *Commerce Com. supra.* The question in that case was whether the Illinois Commerce Commission had jurisdiction to compel a railroad company to replace a spur-track which crossed its track and which crossing had been removed by it. It was held that when the spur-track was laid and connected with the tracks of a public railway it became a public track and subject to the jurisdiction of the commission, with power in that body to require the replacement of the crossing removed. The power of the commission to authorize the laying of a railroad track or to require its connection with a public carrier was not in the case.

The orders of the Commerce Commission were void and the circuit court erred in affirming them. The judgment of that court is therefore reversed and the orders of the commission set aside.

*Judgment reversed; orders set aside.*