ALABAMA & VICKSBURG RAILWAY COMPANY ET AL. *v.* JACKSON & EASTERN RAILWAY COMPANY.

ERROR TO THE SUPREME COURT OF MISSISSIPPI.

No. 244. Argued April 16, 1926.—Decided May 24, 1926.

1. Judgment of a state court *held* reviewable by writ of error. P. 247.
2. Since the enactment of the Transportation Act, 1920, the jurisdiction to determine whether a junction may be established between the main lines of two railroads, both engaged in interstate as well as local commerce, is exclusively in the Interstate Commerce Commission. P. 249.

136 Miss. 726, reversed.

ERROR and certiorari to a judgment of the Supreme Court of Mississippi, which affirmed a dismissal of the bill in a suit by the Alabama & Vicksburg Railway Company to enjoin proceedings in condemnation, instituted by the Jackson & Eastern Railway Company to accomplish a connection between its main line and that of the other company. See also 129 Miss. 437; 131 *id.* 857, 874.

*Mr. J. Blanc Monroe,* with whom *Messrs. R. H. Thompson, A. S. Bozeman, S. L. McLaurin,* and *Monte M. Lemann* were on the brief, for plaintiffs in error.

*Mr. George B. Neville,* with whom *Messrs. Marcellus Green* and *Hardy R. Stone* were on the brief, for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Alabama & Vicksburg Railway and the Jackson & Eastern Railway are both Mississippi corporations. Each owns and operates in intrastate and interstate commerce a railroad within that State. The latter instituted a proceeding under a state law to secure by eminent domain a connection with the former's line at a point east of the City of Jackson, called Curran's Crossing. Prior to instituting the eminent domain proceeding the Jackson & Eastern had secured from the Interstate Commerce Commission a certificate under paragraphs 18–20 of § 1, authorizing the extension of its road from Sebastapol, Mississippi, to Jackson. The order made no reference to Curran's Crossing, or to any connection with the Alabama & Vicksburg. *Public Convenience Certificate of Jackson & Eastern Ry. Co.,* 70 I. C. C. 110, 495. Thereafter, but also before instituting the eminent domain proceeding and before building the extension authorized, the Jackson & Eastern applied to the Commission for an order authorizing it to connect with the main line of the Alabama & Vicksburg at Curran's Crossing, and requiring the latter to grant a joint use of its main line from that point into the City of Jackson. This application, which had apparently been filed under paragraph 9 of § 1 of the Interstate Commerce Act, was withdrawn without a hearing. Compare *United States* v. *Baltimore & Southwestern R. R. Co.,* 226 U. S. 14. No further application was made to the Commission.

By the constitution and statutes of Mississippi a rail-
road corporation organized under the laws of that State
may " cross, intersect, join, or unite its railroad with any
other railroad heretofore or hereafter constructed at any
points on their routes, and upon the ground of such other
railroad company, with the necessary and proper turn-
outs, sidings, switches, and other conveniences, and
. . . [may] exercise the right of eminent domain for
that purpose." Constitution of 1890, §§ 184, 190; Hem-
ingway's Code, §§ 6722, 6725, 6728. This right of emi-
nent domain is exercised by proceedings in a special court
which has jurisdiction to determine only the amount of
the damages payable. The special court cannot pass
upon the right of a plaintiff to institute the proceeding
or upon any defense or other objection. Nor can any
such question be raised upon an appeal from the judg-
ment of the special court. The sole remedy of the object-
ing railroad is a separate proceeding to be brought in a
court of equity. Hemingway's Code, § 1492; *Louisville
& Nashville R. R. Co.* v. *Western Union Tel. Co.*, 234
U. S. 369, 378–380; *Vinegar Bend Lumber Co.* v. *Oak
Grove & G. R. R. Co.*, 89 Miss. 84; *Alabama & Vicksburg
Ry. Co.* v. *Jackson & Eastern Ry. Co.*, 131 Miss. 857, 874.

This suit was brought by the Alabama & Vicksburg in
the appropriate Chancery Court of the State to enjoin the
Jackson & Eastern from pursuing the eminent domain
proceeding. The bill alleged willingness to permit a junc-
tion, but asserted that the point selected by the defendant
was an improper one, would imperil the safety of life and
property, would burden interstate commerce and would
be prejudicial to the plaintiff's interests. It asserted,
among other grounds of relief, the claim that the Inter-
state Commerce Commission has exclusive jurisdiction
over the establishment of junctions or physical connec-
tions between railroads engaged in interstate commerce,
that the Commission had not authorized the connection

here in question, and that the institution of eminent domain proceedings was therefore in violation of the federal law. A restraining order issued upon the filing of the bill. Later, the Chancellor sustained a demurrer to the bill for want of equity; dissolved the injunction; and denied supersedeas pending an appeal to the Supreme Court of the State. That court allowed a supersedeas, 129 Miss. 437; overruled the demurrer; reversed the decree; and remanded the case for further proceedings. It did this on the ground that, while under the state law the connection might ordinarily be made at such point on the other's line as the railroad seeking the junction might desire, the place selected must be a proper one, and the bill alleged that the particular junction sought was not. 131 Miss. 857, 874. Upon that issue the Chancellor, then heard the case on the evidence; found that the proposed connection was a proper one; dissolved the injunction; and dismissed the bill. That decree was affirmed upon a second appeal to the Supreme Court. 136 Miss. 726. In affirming the decree, the highest court of the State overruled the contention of the Alabama & Vicksburg that the Interstate Commerce Commission had exclusive jurisdiction over the establishment of junctions between railroads engaged in interstate commerce; held that Congress had not taken full control of the subject; and concluded that the authority granted by the state law to secure junctions did not interfere with interstate commerce to an appreciable degree, if at all. The case is here on writ of error with supersedeas granted by the Chief Justice of the State. A petition for writ of certiorari was also filed, consideration of which was postponed. As the case is properly here on writ of error, the petition is dismissed.

In *Wisconsin, Minnesota & Pacific R. R.* v. *Jacobson* 179 U. S. 287, decided in 1900, this Court sustained an

order of a state commission which, at the instance of
shippers, had directed two railroads of the State engaged
in interstate and intrastate commerce to provide a
physical connection between their lines. The state com-
mission had found that the connection was required for
intrastate commerce; and this Court concluded that the
connection ordered could not prejudice interstate com-
merce. Since then the authority of the Interstate Com-
merce Commission has been greatly enlarged and the
power of the States over interstate carriers correspond-
ingly restricted. Prominent among the enlarged powers
of the federal Commission is the control conferred over
construction and equipment of railroads, over their use
by other carriers and, generally, over the relation of car-
riers to one another. While none of the amendments in
specific terms confers upon the Commission exclusive
power over physical connections between railroads en-
gaged in interstate commerce, it is clear that the compre-
hensive powers conferred extend to junctions between
main lines like those here in question.

The Act to Regulate Commerce, February 4, 1887, c.
104, 24 Stat. 379, provided, by what is now paragraph
3 of § 3, that carriers shall " afford all reasonable, proper,
and equal facilities for the interchange of traffic between
their respective lines;" but it did not confer upon the
Commission authority to permit and to require the con-
struction of the physical connection needed to effectuate
such interchange. Paragraph 9 of § 1, introduced by Act
of June 8, 1910, c. 309, §. 7, 36 Stat. 539, 548, required a
carrier engaged in interstate commerce to construct a
switch connection " upon application of any lateral,
branch line " and empowered the Commission to enforce
the duty; but that provision was held applicable only to
a line already constituting a lateral branch road. *United
States* v. *Baltimore & Ohio Southwestern R. R. Co.*, 226
U. S. 14. The Act of August 24, 1912, c. 390, § 11, 37

Stat. 560, 568, amending § 6 of the Act to Regulate Commerce, empowered the Commission to require railroads to establish physical connection between their lines and the docks of water carriers; but the provision did not extend to connections between two rail lines. It was not until Transportation Act, 1920, c. 91, 41 Stat. 456, conferred upon the Commission additional authority, that it acquired full power over connections between interstate carriers. By paragraphs 18-20 added to § 1, it vested in the Commission power to authorize constructions or extensions of lines, although the railroad is located wholly within one State; and by paragraph 21 authorized the Commission to require the carrier " to extend its line or lines." By paragraph 4 of § 3 it empowered the Commission to require one such carrier to permit another to use its terminal facilities " including main-line track or tracks for a reasonable distance outside of such terminal."

The only limitation set by 'Transportation Act, 1920, upon the broad powers conferred upon the Commission over the construction, extension and abandonment of the lines of carriers in interstate commerce, is that introduced as paragraph 22 of § 1, which excludes from its jurisdiction " spur, industrial, team, switching or side tracks, located wholly within one State, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation." It is clear that the connection here in question is not a track of this character. Compare *Texas & Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.*, 270 U. S. 266. The proposed junction is between the main lines of the two railroads. The point of junction is on the main line of the Alabama & Vicksburg, near its entrance into the City of Jackson. In support of the objection that a junction there would be dangerous, it was shown that the connection would be located between two tres-

tles, near a highway crossing, on a curve, on a fill, and within the flood area of Pearl River. The establishment of the junction at that point would, if the objection is well founded, obviously imperil interstate commerce. The fact that it may do so, shows that the jurisdiction of the Commission over such connections must be exclusive, if the duty imposed upon it to develop and control an adequate system of interstate rail transportation is to be effectively performed. Moreover, the establishment of junctions between the main lines of independent carriers is commonly connected with the establishment of through routes and the interchange of car services, and is often but a step toward the joint use of tracks. Over all of these matters the Commission has exclusive jurisdiction.

It is true that in this case the state court found that the place selected for the junction was a proper one. But the power to make the determination whether state action will obstruct interstate commerce inheres in the United States as an incident of its power to regulate such commerce. Compare *Colorado* v. *United States, ante,* p. 153. In matters relating to the construction, equipment, adaptation and use of interstate railroad lines, with the exceptions specifically set forth in paragraph 22, Congress has vested in the Commission the authority to find the facts and thereon to exercise the necessary judgment. The Commission's power under paragraph 3 of § 3 to require the establishment of connections between the main lines of carriers was asserted by it in *Pittsburg & West Virginia Ry. Co.* v. *Lake Erie, Alliance & Wheeling R. R.,* 81 I. C. C. 333, a case decided after the withdrawal by the Jackson & Eastern of its application to the Commission for leave to make the junction at Curran's Crossing, and in *Breckenridge Chamber of Commerce* v. *Wichita Falls, Ranger & Fort Worth R. R. Co.,* 109 I. C. C. 81. That its jurisdiction is exclusive was held in *People* v. *Public Service Commission,* 233 N. Y. 113,

119–121.   Compare *Lake Erie, Alliance & Wheeling R. R. Co.* v. *Public Utilities Commission,* 109 Ohio St. 103.

*Writ of certiorari denied.*

*Decree reversed.*