TRANSIT COMMISSION v. UNITED STATES et al. (INTERSTATE COMMERCE COMMISSION, Intervener).

STATE OF NEW YORK v. SAME.

District Court, S. D. New York.

Oct. 3, 1932.

George H. Stover, of New York City (Philip Hodes, of New York City, of counsel), for New York State Transit Commission.

John J. Bennett, Jr., Atty. Gen. of State of New York (Wendell P. Brown, Asst. Atty. Gen., of counsel), for the State of New York.

George Z. Medalie, U. S. Atty., of New York City (Elmer B. Collins, Sp. Asst. to Atty. Gen., of counsel), for the United States.

Joseph F. Keany, of New York City (Alfred A. Gardner, of New York City, of counsel), for respondents Long Island R. R. and Pennsylvania R. Co.

Daniel W. Knowlton, of Washington, D. C. (H. L. Underwood, of Washington, D. C., of counsel), for intervening respondent Interstate Commerce Commission.

Before AUGUSTUS N. HAND, Circuit Judge, and BONDY and PATTERSON, District Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The question involved in these suits is whether the Transit Commission or the Interstate Commerce Commission has jurisdiction to pass on the trackage agreements of the Pennsylvania and the Long Island Railroads. This depends on the proper interpretation of section 1 (18) of the Interstate Commerce Act. The caption of subdivision 18 of section 1 is: *"Extension or abandonment of lines; certificate required."*

Subdivision 18 provides that: "No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment."

It is contended by the Transit Commission and the state of New York that subdivision (18) requires a certificate from the Interstate Commerce Commission only where a railroad (1) extends its line, (2) constructs a new line, (3) acquires another line, or (4) engages in transportation "over or by means of such additional or extended line"; and that the Long Island is not doing any of these things, when it is merely using, jointly with the Pennsylvania, certain existing lines of the latter under a trackage agreement.

The difficulty with this position is that it disregards the broad purposes of the Amendment to the Interstate Commerce Act (of 1920) under which section 1 (18) was adopted. Its general purpose was to control railroads, whose operations affected interstate commerce, in such a way as to avoid excessive expenditures by the building of unnecessary lines and to prevent injurious competition and the abandonment of useful arteries of commerce. New England Divisions Case, 261 U. S. at page 189, 43 S. Ct. 270, 67 L. Ed. 605; Texas & Pac. Ry. v. Gulf, etc., Ry., 270 U. S. at page 277, 46 S. Ct. 263, 70 L. Ed. 578; Colorado v. United States, 271 U. S. at pages 161, 162, 46 S. Ct. 452, 70 L. Ed. 878; Alabama, etc., Ry. Co. v. Jackson, etc., Ry., 271 U. S. at page 249, 46 S. Ct. 535, 70 L. Ed. 928. Operation, whether over newly constructed lines or under trackage agreements over existing lines of another carrier, may substantially affect interstate commerce by affecting the ability of the carriers involved to perform their service as a part of the general transportation system of the country, by unnecessarily duplicating lines, or by causing undesirable expense or other undue burdens.

■ In view of the settled governmental policy of control of interstate transportation by a single body charged with the duty of supervising it as a whole, it seems reasonable to construe the words "operate any line of railroad," found in subdivision 18 of section 1, as embracing any railroad having interstate relations that runs its trains over the lines of another, under a trackage agreement entered into between the two roads. It is true that the clause might be interpreted as directed only to a railroad owning, leasing, or maintaining the tracks used, but it seems hard to justify a definition that would prevent national control of such important arteries of interstate commerce as are railroads using the tracks of other railroads engaged therein. In our opinion the above words are alone sufficient to bring the present case within the jurisdiction of the Interstate Commerce Commission.

Moreover, the words "no carrier * * * shall undertake the extension of its line of railroad * * * or shall engage in transportation * * * by means of such * * * extended line" fairly cover the proposed contract. It is unreasonable to confine them to cases of the construction, acquisition, or maintenance of an extension by an owner. An extension, whether arising out of a trackage agreement for joint use of the lines of another railroad or otherwise, has a vital effect on interstate commerce and requires national control. The same dangers that are to be guarded against when a railroad extends its line for its own use, or leases it for the sole use of another, exist where it agrees to a joint use by itself and another road. Whether there was need of the additional service in the particular territory, whether the service would pay, whether the proposed operation would weaken the road with which the carrier proposing it would come into competition, whether the cost of the trackage rights would be too burdensome, whether such operations would be likely to impair the ability

of the carriers involved to perform their common carrier functions and to maintain themselves as a part of the general transportation system of the country, are all factors to be considered in determining whether public convenience and necessity warrant such operation.

The decisions of the Interstate Commerce Commission first denied and later merely doubted its jurisdiction over such trackage agreements, but for some ten years the decisions have been the other way. In Cleveland, C., C. & St. L. Ry. Co. v. Commerce Commission, 315 Ill. 461, 146 N. E. 606, 54 A. L. R. 45, the Supreme Court of Illinois treated a trackage agreement as an "extension" under section 1 (18). In Cleveland, etc., Ry. v. United States, 275 U. S. at page 409, 48 S. Ct. 189, 192, 72 L. Ed. 338, the Supreme Court sustained the jurisdiction of the Interstate Commerce Commission under another section of the act stating that "the order gave * * * no trackage rights" and impliedly agreeing with the Illinois Court on the law but differing as to the facts and the section applicable to the case. In I. C. C. v. Los Angeles, 280 U. S. 52, 50 S. Ct. 53, 74 L. Ed. 163, the Supreme Court seems to have approved an order of the Interstate Commerce Commission for the joint use of terminal facilities. Justice Brandeis, moreover, remarked in Alabama & V. Ry. v. Jackson, etc., Ry., 271 U. S. at page 249, 46 S. Ct. 535, 537, 70 L. Ed. 928, that: "The only limitation set by Transportation Act of 1920, upon the broad powers conferred upon the Commission over the construction, extension and abandonment of the lines of carriers in interstate commerce, is that introduced as paragraph 22 of section 1 [49 USCA § 1 (22)], which excludes from its jurisdiction 'spur, industrial, team, switching or side tracks, located * * * wholly within one state, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation.' "

There is also the other ground of jurisdiction of the Interstate Commerce Commission that the trackage agreement expired several years ago and the service so far as the parties are concerned may at any time be abandoned. Section 1 (18) expressly gives jurisdiction to the Interstate Commerce Commission to prevent abandonment and requires a certificate that "public convenience and necessity permit" abandonment before it can take place. If the Commission has jurisdiction to prevent abandonment in such a case as this, it has the inevitable power to compel continuance and, as incidental to that power, to determine what sort of an agreement is compatible with the interests of interstate commerce.

The contention of the Transit Commission that the order of the Interstate Commerce Commission is invalid because it affects an existing relation between the railroads is without substance. The Long Island is a mere tenant at will, whose right to use the Pennsylvania terminal facilities has expired. The argument would apparently preclude jurisdiction perpetually, wherever a carrier having a lease in 1920 holds over with the acquiescence of its lessor. Such a result has no rational basis.

The contention that the certificate of convenience and necessity ought not to have been made upon the conditions imposed cannot prevail. Section 1 (20), 49 USCA § 1 (20), expressly empowers the Commission to attach conditions to a certificate. Atlantic Coast Line R. Co. v. United States, 284 U. S. at page 295, 52 S. Ct. 171, 76 L. Ed. 298.

In our opinion the Interstate Commerce Commission has jurisdiction over the trackage agreement under section 1 (18), and section 148 of the Railroad Law of the State of New York (Consol. Laws N. Y. c. 49) does not govern this case.

Jurisdiction was properly assumed by the Interstate Commerce Commission because the Long Island Railroad, when running its trains under the proposed trackage agreement, (1) would be operating a "line of railroad" within the meaning of section 1 (18); (2) would be undertaking the "extension of its line" and engaging "in transportation * * * by means of such * * * extended line"; and (3) would be preventing an abandonment, which might occur, if the railroads agreed to discontinue joint use of terminal facilities because of burdensome rulings of the State authorities.

The motions for a preliminary injunction are denied, and the petitions are each dismissed, with costs.

Findings may be proposed in accordance with this opinion within ten days, which, however, are intended solely for the aid of the court in making its findings and shall be no part of the record.