**CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY and Lake Superior and Ishpeming Railroad, Plaintiffs,**

**v.**

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

**Chicago and North Western Railway Company and Duluth, South Shore and Atlantic Railroad Company, Intervening Defendants.**

**Civ. A. No. 60–C–76.**

United States District Court
E. D. Wisconsin.

March 4, 1963.

R. K. Merrill, Joseph J. Nagle, and Frank M. Long, Chicago, Ill., Rodger S. Trump and Richardson R. Robinson, Milwaukee, Wis., for plaintiff, Chicago, Milwaukee, St. Paul and Pacific R. Co.

Philip H. Porter, Madison, Wis., Bernard H. Davidson, Ishpeming, Mich., for plaintiff, Lake Superior and Ishpeming Railroad.

Lee Loevinger, Asst. Atty. Gen., and Patrick M. Ryan, Attorney, Department of Justice, Washington, D. C., James B. Brennan, U. S. Atty., and Philip L. Padden, Asst. U. S. Atty., Eastern District of Wisconsin, Milwaukee, Wis., for defendant, the United States.

Robert W. Ginnane, General Counsel, and Arthur J. Cerra, Asst. General Counsel Interstate Commerce Commission, Washington, D. C., for defendant, Interstate Commerce Commission.

Carl McGowan, Fred O. Steadry, Edgar Vanneman, Jr., and Charles H. Dickman, Chicago, Ill., Edward H. Borgelt and Roger S. Bessey, Milwaukee, Wis., for intervening defendant, Chicago and North Western Railway Company.

Thomas M. Beckley, Minneapolis, Minn., Reginald W. Nelson, Milwaukee, Wis., for intervening defendant, Duluth, South Shore and Atlantic Railroad Co.

Before DUFFY, Circuit Judge, TEHAN, Chief Judge, and GRUBB, District Judge.

GRUBB, District Judge.

This action is brought by the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (hereinafter referred to as the "Milwaukee Road") and the Lake Superior & Ishpeming Railroad Company (hereinafter referred to as the "Ishpeming") to set aside and permanently enjoin certain orders of the Interstate Commerce Commission (hereinafter referred to as the "Commission").

On October 21, 1957, plaintiffs, the Milwaukee Road and Ishpeming, commenced operation over a newly constructed connection between their main lines of railroad approximately two miles north of the town of Republic in the Upper Peninsula of Michigan, at a point where their respective rights of way are contiguous and parallel. Continuously and without interruption since that date, plaintiffs have interchanged carload traffic via that connection pursuant to tariffs filed with the Commission.

The connection itself is simply a crossover track between plaintiffs' respective railroads. It comprises two switches or turnouts, one in each of plaintiffs' lines, which are connected by 262 feet or approximately 0.05 miles of track.

In addition to the connection, two parallel interchange sidings were concurrently constructed and connected at each end, not to the connecting track but to Ishpeming's main line track. The function of the sidings is to temporarily park cars from a train of one plaintiff off the main track until they are picked up by a train of the other plaintiff and to facilitate the various movements required to interchange cars over the connection.

Pursuant to a contract between plaintiffs, the total cost of construction, amounting to approximately $28,690, was shared equally.

On January 3, 1958, the Duluth, South Shore and Atlantic Railroad Company, since renamed the Soo Line Railroad Company (hereinafter referred to as "Duluth"), complained to the Commission, alleging that such connection was an "extension" of plaintiffs' respective lines of railroad within the meaning of Section 1(18) of the Interstate Commerce Act, and that no certificate of public convenience and necessity had first been obtained pursuant to the requirements of that section. The Duluth requested the Commission to investigate and require compliance with Sections 1 (18) to 1(21).

Plaintiffs' reply averred that the connecting track did not constitute an "extension" as contemplated by Section 1 (18) but rather was a "switching track" within Section 1(22) and, therefore, that the Commission had no jurisdiction in the premises.

The pertinent provisions of the Interstate Commerce Act are set out in the footnote below.*

Plaintiffs nevertheless applied under Section 1(18) for a certificate of public

* Title 49 U.S.C.A.

"§ 1, par. (18). *Extension or abandonment of lines; certificate required; contracts for joint use of spurs, switches, etc.* No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construc-

convenience and necessity to operate over the connection. The Chicago and North Western Railway Company (hereinafter referred to as "North Western") was permitted to intervene in opposition to plaintiffs' application. After a hearing held on September 5, 1958, the Examiner found that the Republic Junction connecting track constituted extensions of plaintiffs' respective lines of railroad within the meaning of Section 1(18), and further recommended that plaintiffs' application for a certificate of public convenience and necessity be granted.

On September 25, 1959, Division 4 of the Commission entered its report and order reversing the Examiner's finding that public convenience and necessity required the facility, and affirmed his finding that the connection is an extension of applicants' lines. This order denied the application for a certificate and required plaintiffs to cease and desist from maintaining and operating both the connecting crossover and the interchange sidings at Republic Junction. On April 7, 1960, the Commission entered an order denying plaintiffs' petition to reconsider its prior report and order.

On June 13, 1960, this court issued a preliminary injunction suspending the operation of the Commission's orders pending final determination of the case.

On October 10, 1962, the Commission entered an order annulling, vacating, and setting aside the cease and desist provisions of its prior orders. This action resulted when the Commission determined in another proceeding that under Section 1(20) of the Act, a competent court is the only forum having jurisdiction to grant relief for a violation of Section 1(18) of the Act.

Defendants have filed a motion to dismiss that portion of the complaint which attacks the Commission's jurisdiction under Sections 1(18)–(22) to enter a cease and desist order on the ground that that issue has been rendered moot by the Commission's order of October 10, 1962. That motion is hereby granted.

Plaintiffs' complaint presents two issues for determination: (1) Whether the Commission's finding that the Republic Junction trackage constitutes an "extension" within the meaning of Section 1 (18) is correct; and if so, (2) whether the order of the Commission denying a certificate of public convenience and necessity is supported by substantial evidence.

This court's jurisdiction is based upon Sections 1336, 1398, 2284, 2321, 2322, 2324, and 2325, 28 U.S.C.A.

The question of whether the trackage involved herein is an "extension" or is a Section 1(22) track is a mixed question of fact and law. United States v. Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070 (1936). Although the Commission must incidentally pass on the issue of whether or not a track is an "extension" subject to its jurisdiction whenever an application under Section 1 (18) is filed, the final determination of that issue is for the court. Texas & Pacific Ry. Co. v. Gulf, Colorado & Santa Fe Ry. Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578 (1926); Powell v. United States, 300 U.S. 276, 57 S.Ct. 470, 81 L. Ed. 643 (1937).

tion and operation, of such additional or extended line of railroad, * * *."

Par. (19) provides, among other things, that upon application for such certificate, the Commission shall give certain prescribed notices.

Par. (20) provides, among other things, that any construction or operation contrary to the provisions of paragraph (18) may be enjoined by any court of competent jurisdiction by any party in interest.

Par. (21) provides, among other things, that the Commission may authorize or require any carrier by railroad to provide itself with safe and adequate facilities and to extend its line or lines.

"§ 1, par. (22). *Construction, etc., of spurs, switches, etc., within State.* The authority of the Commission conferred by paragraphs (18) to (21) of this section, both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, * * *."

The principal decision relied on by the Commission is Texas & Pacific Ry. Co., supra. In that landmark case, the Texas & Pacific sued under Section 1(20) to enjoin the Gulf, Colorado & Santa Fe from constructing tracks into an industrial territory adjacent to the line of the Texas & Pacific. The evidence showed that the proposed seven and one-half miles of track would tap territory already adequately served by Texas & Pacific and would divert freight revenues amounting to $500,000 per year. In holding the proposed track to be an "extension" and not a "spur" or "industrial" track within Section 1(22), the court furnished a guideline as to what constitutes an "extension," stating at page 278, 46 S. Ct. at page 266:

> "* * * But where the proposed trackage extends into territory not theretofore served by the carrier, and particularly where it extends into territory already served by another carrier, its purpose and effect are, under the new policy of Congress, of national concern. For invasion through new construction of territory adequately served by another carrier, like the establishment of excessively low rates in order to secure traffic enjoyed by another, may be inimical to the national interest. If the purpose and effect of the new trackage is to extend substantially the line of a carrier into new territory, the proposed trackage constitutes an extension of the railroad within the meaning of paragraph 18, although the line be short and although the character of the service contemplated be that commonly rendered to industries by means of spurs or industrial tracks. * * *"

As the court points out in State of Georgia v. United States, 156 F.Supp. 711 (N.D.Ga.1957), aff'd 356 U.S. 273, 78 S. Ct. 771, 2 L.Ed.2d 760 (1958), the standard laid down in the Texas & Pacific case is whether or not there is a *substantial* extension into *new* territory. In the State of Georgia decision, the court held there was a *substantial* extension because it would involve substantial expenditures ($523,916) and would run a substantial distance. The facts in that case are not applicable to the situation here. We cannot say that a connecting track 262 feet in length which cost $28,690 to build is "substantial," nor is there any "invasion" into new territory served by the intervening defendants.

No industries are located on or adjacent to the Republic Junction connecting track, and, as the Commission concedes, the movement of the cars from the line of the Milwaukee Road to the Ishpeming, and vice versa, is a "switching movement."

The Commission found that the switching of cars from one carrier to the other permits the plaintiffs to divert traffic from the intervening defendants, the Duluth and the North Western.

Prior to the construction of the connection, there was only one two-line route connecting points on the Ishpeming with Iron Mountain and points south. That route was via the Ishpeming and the North Western. As a result of the connection, there is now an additional route between these points via the Ishpeming to Republic Junction, and then via the Milwaukee Road. The Commission also found that the connection enabled the Ishpeming to compete for traffic which might otherwise be routed via the Duluth. This results from the fact that the Ishpeming and the Duluth run through the same towns between Marquette and Duncan, Michigan. Prior to the connection, traffic between these points and points served only by the Milwaukee Road was necessarily routed via the Duluth and the Milwaukee Road which connected at Champion, Michigan. The Commission then reasons that since the connection opens up new "traffic patterns" and provides a new "through route" via the Ishpeming and the Milwaukee Road, it has an importance far out of proportion to its length.

The fact that a new "through route" is opened does not make the track

an extension of plaintiffs' lines. A "through route" is an arrangement between connecting railroads for the continuous carriage of goods from the originating point on the line of one carrier to a destination on the line of another. St. Louis S. W. Ry. Co. v. United States, 245 U.S. 136, 139, 38 S.Ct. 49, 62 L.Ed. 199 (1917). The only condition precedent to the existence of a through route is the holding out of the two carriers to provide through transportation service. Thompson v. United States, 343 U.S. 549, 72 S.Ct. 978, 96 L.Ed. 1134 (1952).

The Commission concedes that it has no authority to require carriers to obtain its consent prior to initiating new through routes, but argues that the construction of a new piece of track to enable the carriers to initiate through routes is a factor in determining whether the construction falls under Section 1(18) or Section 1(22). This argument fails to take into account the difference between a "through route" and a through movement of complete trains. There is no through movement of plaintiffs' trains over each other's lines. Neither plaintiff is operating over the line of the other. The most that can be said is that each plaintiff has physically lengthened its respective line of railroad a distance of 262 feet, the length of the crossover track. The decisions in Alabama & Vicksburg Ry. Co. v. Jackson & Eastern Ry. Co., 271 U.S. 244, 46 S.Ct. 535, 70 L.Ed. 928 (1926), and El Dorado & W. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 5 F.2d 777 (8th Cir. 1925), cited by defendants, are inapplicable. Each of these decisions involved an extension of line to a new terminus by means of proposed trackage rights over another railroad.

With regard to the competitive situation between plaintiffs and the intervening defendants, the record shows that Sunrise Landing, Michigan, the eastern terminus of the Ishpeming, is a source of saw logs and chemical wood which is shipped to the Kingsford Chemical Company at Iron Mountain, Michigan, and to the Amasa Lumber Company at Amasa, Michigan. Both of these companies have been served by the Milwaukee Road prior to the Republic Junction connection, as they are now with the connection in operation. Moreover, neither of the intervening defendants, Duluth or North Western, has ever served Sunrise Landing. The only line serving that point is the Ishpeming. Therefore, regardless of the fact that the connection creates a new through route to reach the Amasa and Iron Mountain shippers, it cannot be said that there is an "invasion" into new territory served by the intervening defendants within the doctrine of the Texas & Pacific case, supra.

In Missouri, K. & T. R. Co. of Texas v. Texas & N. O. R. Co., 172 F.2d 768 (5th Cir. 1949), it was held that the Texas & Pacific case did not apply where two railroads already were in competition with each other in territory to which one of them builds a new track. The switching movement over the Republic Junction connection is similar to that which existed in Missouri Pac. R. Co. v. Union Pac. Ry. Co., 60 F.2d 126 (D.Kan.1931). In that case the Union Pacific and the Chicago & Great Western Railway Company had tracks parallel to and adjoining each other. The Union Pacific sought to construct 350 feet of track connecting these two railroad lines, to be used to interchange freight originating on their respective lines and designated for points upon the other line. The proposed connection was to be used to interchange freight which formerly had been interchanged between them via the Missouri Pacific. In holding that the connecting track was not an extension under Section 1(18), the court noted at page 127:

> "It is too small a matter to require the attention of the Interstate Commerce Commission, and is undoubtedly within one of the exceptions that Congress had in mind in enacting the statute referred to."

We think this statement is equally applicable to the track involved here. In addition to the fact that the connection at Republic Junction comprises a relatively insignificant length of 262 feet of track in an unpopulated, wilderness area,

it should be pointed out that none of the usual factors or standards indicating that a track is an extension of a railroad line exist here.

In New York Central Railroad Co. v. Chicago & Eastern Illinois Railroad Co., 222 F.2d 828 (7th Cir. 1955), the court held that a proposed track was an "industrial" or "spur" track within the meaning of Section 1(22). In that decision, the Court of Appeals for the Seventh Circuit quoted with approval from United States v. Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070 (1936), wherein the Supreme Court stated at pages 108–109, 56 S.Ct. at pages 691, 692:

> "The Oregon Short Line has never maintained a train schedule or regular service over this trackage; has never furnished express, passenger or mail service; has maintained no buildings, loading platforms or agent at any point along the trackage; and has had no telegraph or telephone line in connection therewith. * * * "

In addition, the court in the New York Central Railroad Co. case pointed out that no through train service with any other road would be maintained by the defendant in connection with such trackage which laid in an area of undeveloped farm land. See also Pennsylvania Railroad Co. v. Reading Company, 132 F. Supp. 616 (E.D.Pa.1955), wherein the court applies many of the same tests in determining whether a track is an extension of a line of railroad.

Since neither of the plaintiffs in the instant action supplies any of these services over the Republic Junction connection, and since the connection does not extend into territory which heretofore has been exclusively served by the intervening defendants within the doctrine of the Texas & Pacific case, we hold that Republic Junction connection is a "switching track" and is, therefore, excluded from the jurisdiction of the Commission.

It is a matter of common knowledge that there are many thousands of switches between lines of different railroads where they are in close proximity and over which cars are shifted from one railroad to another. It is inconceivable that Congress intended each of those to be subject to the jurisdiction of the Commission and to be an "extension" of the lines of such railroads; otherwise, there would be no point in Section 1(22) of the Interstate Commerce Act.

In view of the foregoing, we need not pass upon the second issue as to whether or not the Commission's denial of a certificate of public convenience and necessity is supported by substantial evidence.

Plaintiffs are directed to prepare a decree annulling and setting aside the orders of the Interstate Commerce Commission and permanently enjoining the enforcement thereof in accordance with this decision, and are to submit it to defendants for approval as to form only.